(COMMON LAW.)

## BARR v. GRATZ'S *heirs.*

A patent issued on the 18th November, 1784, for 1,000 acres of land, in Kentucky, to J. C., who had previously, in July, 1784, covenanted to convey the same to M. G., the ancestor of the lessor of the plaintiff, and on the 23d June, 1786, M. G. made an agreement with R. B., the defendant in ejectment, to convey to him 750 acres, part of the tract of 1,000 acres, under which agreement R. B. entered into possession of the whole tract: and on the 11th of April, 1787, J. C., by direction of M. G. conveyed to R. B. the 750 acres in fulfilment of said agreement, which were severed by metes and bounds from the tract of 1,000 acres. J. C. and his wife, on the 26th of April, 1791, made a conveyance in trust of all his property, real and personal, to R. J. and E. C. On the 12th of February, 1818, R. J., as *surviving trustee,* conveyed to the heirs of M. G., under a decree in equity, that part of the 1,000 acres not previously conveyed to R. B., and in the part so conveyed, under the decree, was included the land claimed in the ejectment. R. B. (the defendant) claimed the land in controversy under a patent for 400 acres issued on the 15th of September, 1795, founded on a survey made for B. N., May 12th, 1782: and under a deed of the 13th of December, 1796, from one Coburn, who had, in the winter and spring of 1791, entered into and fenced a field within the bounds of the original patent for 1,000 acres to J. C., claiming to hold the

same under B. N.'s survey of 400 acres. *Held*, that upon the issuing of the patent to J. C., in November, 1784, the possession then being vacant, he became by operation of law vested with a constructive actual seizin of the whole tract included in his patent; that his whole title passed by his prior conveyance to M. G. (the ancestor of the lessor of the plaintiff;) and that when it became complete at law by the issuing of the patent, the actual constructive seizin of J. C. passed to M. G., by virtue of that conveyance.

*Held*, that when subsequently, in virtue of the agreement made in June, 1786, between M. G. and R. B. (the defendant) the latter entered into possession of the whole tract, under this equitable title, his possession being consistent with the title of M. G., and in common with him, was the possession of M. G. himself, and enured to the benefit of both, according to the nature of the respective titles. And that when subsequently, in April, 1787, by the direction of M. G., J. C. conveyed to the defendant 750 acres in fulfilment of the agreement between M. G. and the defendant, and the same were severed by metes and bounds in the deed from the tract of 1,000 acres, the defendant became sole seized in his own right of the 750 acres so conveyed. But as he still remained in the actual possession of the residue of the tract, within the bounds of the patent, which possession was originally acquired under M. G., the character of his tenure was not changed by his own act, and, therefore, he was *quasi* tenant to M. G., and, as such, continued the actual seizin of the latter, over this residue at least, up to the deed from Coburn to the defendant, in 1796.

*Held*, that if Coburn, in 1791, when he entered and fenced a field, &c. had been the legal owner of B. N.'s survey, his actual occupation of a part would not have given him a constructive actual seizin of the residue of the tract included in that survey, that residue being at the time of his entry and occupation in the adverse seizin of another person, (M. G.) having an older and better title. But there being no evidence that Coburn was the legal owner of B. N.'s survey, his entry must be considered as an entry without title, and consequently his disseizin was limited to the bounds of his actual occupancy.

The deed of the 16th of July, 1784, from J. C. to M. G., being more than thirty years old, and proved to have been in possession of the lessors of the plaintiffs, and actually asserted as the ground of their title in the equity suit, was admissable in evidence without regular proof of its execution.

The deed from J. C. and wife, to D. J. and E. C., in 1791, was not within the statute of champerty and maintenance of Kentucky;

for as to all the land not in the actual occupancy of Coburn, the deed was operative, the grantors and those holding under them having at all times had the legal seizin.

In general, judgments and decrees are evidence only in suits between parties and privies; but the doctrine is wholly inapplicable to a case like the present, where the decree in equity was not introduced as *per se* binding upon any rights of the other party, but as an introductory fact to a link in the chain of the plaintiff's title, and constituting a part of the muniments of his estate.

The deed of 1813, from R. J., surviving trustee, under the decree in equity, was valid without being approved by the Court, and recorded in the Court, according to the statute of Kentucky of the 16th of February, 1808, c. 453.

ERROR to the Circuit Court of Kentucky.

This was an action of ejectment, in which the defendants in error were the lessors of the plaintiffs below, and which was brought to recover the possession of a tract of land in the district of Kentucky, claimed by them under a patent issued to John Craig, November 18th, 1784, for 1,000 acres of land, included in three separate warrants of 320 acres, 480 acres, and 200 acres, surveyed for John Craig, on the 14th of January, 1783. On the 16th of July, 1784, John Craig conveyed, by deed, the said tract of land to Michael Gratz, the ancestor of the lessors of the plaintiffs, and covenanted to cause a patent to issue to said Gratz, or if it could not issue in his name, that said Craig would stand seized to the use of Gratz, and make such other conveyances as should be necessary to confirm the title. On the 23d of June, 1786, Gratz made an agreement with Robert Barr, the defendant in ejectment, to convey to him 750 acres of land, part of the said 1,000 acres; the defendant entered into posses-

sion of the whole tract, and settled a quarter and
farm thereon, and on the 11th day of April, 1787,
John Craig, by the direction of said Gratz, conveyed
to the defendant, Barr, 750 acres, in fulfilment of
said agreement, which were severed by metes and
bounds from the said tract of 1,000 acres. On the
26th of April, 1791, John Craig and his wife, made
a conveyance in trust to Robert Johnson and Elijah
Craig of all his property, real and personal. On the
12th of February, 1813, Robert Johnson, as *surviv-
ing trustee*, under a decree in equity of the Circuit
Court for the district of Kentucky, conveyed to the
lessors of the plaintiffs that part of the 1,000 acres
not previously conveyed to the defendant, Barr, and
in the part so conveyed was included the land
claimed in this action.

The defendant, Barr, claimed the tract of land
in controversy under a patent for 400 acres issued
by the State of Kentucky, on the 15th of September,
1795, founded on a survey made for Benjamin Ne-
therland, May 12th, 1782.

On the trial of the cause, the plaintiffs read in evi-
dence to the jury the patent to John Craig for 1,000
acres of land; copies of two other surveys for John
Craig; the deed of the 16th July, 1784, to Michael
Gratz, the ancestor of the lessors of the plaintiffs;
the deed of trust of the 26th of April, 1791, from
John Craig and wife to Robert Johnson and Elijah
Craig; the deed of the 12th February, 1813, from
Robert Johnson (as surviving trustee to the lessors
of the plaintiffs; the decree in the chancery suit be-
tween Michael Gratz and John Craig and others,

under which that deed was made; the surveys, plats, and reports of the 14th of January, 1783, signed by John Price, and the agreement between the said Gratz and Barr. The plaintiffs also introduced parol testimony establishing the boundary of the land patented to John Craig, and proving the defendant's possession of the whole tract.

The defendant gave in evidence a deed from one Coburn to him, dated the 13th of December, 1796; the deed from Craig to him of the 11th of April, 1787; the plat and certificate of Netherland's survey; a certificate of its conveyance by Ann Shields to the defendant; and gave parol testimony that, in the winter and spring of 1791, Coburn entered into, and fenced a field within the boundary of Craig's patent, claiming to hold the same under the title of Netherland, as part of the land included in his survey of 400 acres.

The defendant objected to the admission in evidence of the record and proceedings of the Circuit Court in the Chancery suit between Michael Gratz and John Craig and others; but the decree was permitted to be read to the jury, to which the defendant excepted. The defendant also excepted to the admission in evidence of the deed from John Craig to Michael Gratz, dated the 16th of July, 1784, because the same was not proved by the subscribing witnesses, nor their absence accounted for.

The Court instructed the jury as follows: 1. That if they should be of opinion that neither the defendant, nor John Coburn, under whom he claims, were in actual possession of the land now in dispute prior

to the 18th day of November, 1784, the date of the patent to John Craig for the land now in dispute, that the emanation of the said grant gave possession to the said John Craig of the whole of the said land ; and that the present plaintiffs were entitled to the benefit of that possession. 2. That if the jury should be of opinion that Robert Barr, the defendant, entered upon, and took possession of the land in contest under a contract with the ancestor of the plaintiffs, and was so possessed at the time of the settlement of Coburn, under whom the defendant now pretends title, that the possession of Coburn, when taken, did not extend within the patent lines, under which the lessors of the plaintiffs claim, be-beyond his actual occupancy. 3. That Coburn's claiming and fencing a part of the land in 1791, or whenever the jury should be of opinion he took possession and fenced within the patent limits aforesaid, did not give to him a legal possession to any other part of the land within the patent to Craig, than that of which he had the actual occupancy. 4. That the possession of Coburn, attempted to be proved, more than twenty years before the bringing this suit, did not bar the plaintiffs' right to sue, further than he showed an actual possession for twenty years, or upwards, next before bringing this suit.

The defendant objected to the instructions so given the jury, and moved that the Court should give certain other instructions to the jury, which were refused. A verdict was taken for the plaintiffs, and judgment rendered thereupon. The defendant afterwards moved for a new trial, which was refused by

the Court. The cause was thereupon brought, by writ of error, to this Court.

This cause was argued by Mr. *Trimble,* for the plaintiffs in error, who made the following points: 1. That the Court below erred in refusing the motion for a new trial. 2. That the decree in the Chancery suit between Michael Gratz and John Craig and others, was not admissible in evidence in this case. 3. That there was error in admitting in evidence the deed from John Craig to Michael Gratz of the 16th of July, 1784, without the regular proof of its execution by the subscribing witnesses. 4. That the deed of the 13th of February, 1813, from Robert Johnson, as surviving trustee, to the lessors of the plaintiff, under the decree in chancery, was not admissible in evidence, without preliminary proof that Elijah Craig was dead. 5. That the said deed was not approved by the Court, nor recorded as required by the statute of Kentucky of the 16th of February, c. 453. 6. That the deed of the 26th of April, 1791, from John Craig and wife, in trust, to Robert Johnson and Elijah Craig, was void under the statute of champerty and maintenance, the land being at the time in the adverse possession of Coburn. 7. That the Court below erred in the instructions it gave to the jury.

Mr. *Talbot* and Mr. *Sergeant,* contra.

Mr. Justice STORY delivered the opinion of the Court. In this case, it is unnecessary to travel

through all the exceptions taken by the defendant in the Court below, because, upon the facts stated in the bill of exceptions, some of the opinions required of the Court upon points of law, do not arise from the evidence ; and as to others, the opinion of the Court, if in any respect erroneous, was so in favour of the defendant.

The first error assigned is, that the Court refused to grant a new trial ; but it has been already decided, and is too plain for argument, that such a refusal affords no ground for a writ of error.

Another error alleged is, that the Court allowed the decree of the Circuit Court, in the Chancery suit between Michael Gratz and John Craig and others, to be given in evidence to the jury. In our opinion this record was clearly admissible. It is true that, in general, judgments and decrees are evidence only in suits between parties and privies. But the doctrine is wholly inapplicable to a case like the present, where the decree is not introduced as *per se* binding upon any rights of the other party, but as an introductory fact to a link in the chain of the plaintiff's title, and constituting a part of the muniments of his estate ; without establishing the existence of the decree, it would be impossible to establish the legal validity of the deed from Robert Johnson, to the lessors of the plaintiffs, which was made under the authority of that decree ; and under such circumstances to reject the proof of the decree, would be, in effect, to declare that no title derived under a decree in Chancery, was of any validity except in a suit between parties and privies, so that in

a suit by or against a stranger, it would be a mere nullity. It might with as much propriety be argued, that the plaintiff was not at liberty to prove any other title deeds in this suit, because they were *res inter alios acta.*

Another error alleged is, the admission in evidence of the deed of John Craig to Michael Gratz, dated the 16th of July, 1784, without the regular proof of its execution by the subscribing witnesses. But as that deed was more than thirty years old, and was proved to have been in the possession of the lessors of the plaintiff, and actually asserted by them as the ground of their title in the Chancery suit, it was, in the language of the books, sufficiently accounted for; and on this account, as well as because it was a part of the evidence in support of the decree, it was admissible, without the regular proof of its execution.

Another error alleged is, that the deed from Robert Johnson to the plaintiffs, under the decree in Chancery, was not admissible in evidence without proof that Robert Johnson was the surviving trustee, and that Elijah Craig was dead. But upon examining the bill of exceptions of the defendant, no point of this sort arises; for it is there stated that the plaintiff gave in evidence " the deed from Robert Johnson the *surviving trustee* to the lessors of the plaintiff;" and no objection appears to have been made to its admissibility on this account.

Having disposed of these minor objections, we may advance to the only points of any real importance in the cause, but which, in our opinion, are of no intrinsic difficulty. Upon the issuing of the pa-

tent to John Craig, in November, 1784, the posses-sion then being vacant, he became, by operation of law, vested with a constructive actual seisin, of the whole tract of land included in his patent. His whole title (such as it was) passed by his prior conveyance in July, 1784, to Michael Gratz, the ancescestor of the lessor of the plaintiff, and the moment it became complete at law by the issuing of the patent, the actual constructive seisin of Craig was transferred to Gratz, in virtue of that conveyance.[a] When subsequently, in virtue of the agreement made in June, 1786, between Michael Gratz, and the defendant, for the purchase of 750 acres of the tract of 1,000 acres, the defendant entered into possession of the whole tract, under this equitable title, his possession being consistent with the title of Gratz, and in common with him, was the possession of Gratz himself, and enured to the benefit of both, according to the nature of their titles. When subsequently, in April, 1787, by the direction of Gratz, Craig conveyed to the defendant a large portion of the land in fulfilment of the agreement between Gratz and Barr, and the same was severed by the metes and bounds in the deed from the tract of 1,000 acres, the defendant became sole seized in his own right of the portion so conveyed. But as he still remained in the actual possession of the residue of the tract within the bounds of the patent, and this possession was originally taken under Gratz, the character of his tenure was not changed by his own act, and there-

a *Vide* Green v. Liter, 8 *Cranch,* 229. 245.

fore he was *quasi* tenant to Gratz; and as such, continu-ed the actual seisin of the latter over the whole of this residue, at least up to the period of the deed from Coburn to the defendant in 1796. This brings us to the consideration of the period when the evidence first establishes any entry or possession in John Coburn. It appears by the evidence, that in the winter and spring of 1791, Coburn entered into, and fenced, a field within the boundary of Craig's patent, claiming to hold the same under the title of Netherland, as part of the land included in his survey of a tract of 400 acres. If Coburn at this time had been the legal owner of Netherland's survey, his actual occupation of a part, would not have given him a constructive actual seisin of the residue of the tract included in that survey, if at the time of his entry and occupation that residue was in the adverse seisin of another person having an older and better title. For where two persons are in possession of land at the same time, under different titles, the law adjudges him to have the seisin of the estate who has the better title. Both cannot be seised, and, therefore, the seisin follows the title. Now it is clear that the title of Craig, and, of course, of his grantee Gratz, was older and better than Netherland's; and the possession of Barr under that title, being the possession of Gratz, the legal seisin of the land which was not sold to Barr, was by construction of law in Gratz; and the disseisin of Coburn under a junior title, did not extend beyond the limits of his actual occupancy. This reasoning proceeds upon the supposition that Coburn had a good title to Netherland's survey.

But, in fact, no such title was shown in evidence, there being no proof that Ann Shield, from whom Coburn derived his title, was the legal owner of the title of Netherland. So that the entry of Coburn must be considered as an entry without title, and, consequently, his disseisin was limited to the bounds of his actual occupancy. This view of the case disposes of the objection to the deed from Craig and wife to Robert Johnson and Elijah Craig, in 1791, upon the ground that it was within the statutes of champerty and maintenance, the land being at the time in the adverse possession of Coburn; for as to all the land not in his actual occupancy (and to this alone the charge of the Court applied) the deed was not, at all events, operative; the grantors, and persons holding under them, having at all times had the legal seisin.[a]

Another objection taken is, that the deed from Robert Johnson to the lessors of the plaintiff, under the decree in Chancery, was not approved by the Court, nor recorded in the Court in conformity with the statute of Kentucky of the 16th of February, 1818, ch. 453. In our judgment no such approval was necessary; and upon examination of the statute in question, it is clear that it is not imperative in the present case.

Upon the whole, without going more minutely into the case, we are all of opinion that the judgment of the Court below ought to be affirmed. No error has been committed which is injurious to the defend-

a Vide Walden v. Gratz's Heirs, ante, vol. 1. p. 292.

ant.   He has had the full benefit of the law, so far as the facts of his case would warrant the Court in applying it in his favour.

Judgment affirmed.