Baldwin, J.
The terms seisin and disseisin have their origin in the feudal law, and their precise technical signification is now obscured by the progress of society, and the mists of time. It is sufficient, in the administration of justice, to ascertain their practical application at the present day; and this is to be found chiefly in reference to the validity of conveyances, the acquisition of titles by marriage, and the operation of the statutes of limitation. In reference to these subjects, seisin may be considered as importing the possession of him who has an estate of freehold; and disseisin, as the wrongful dispossession or ouster of him by another. Such wrongful dispossession or ouster, or any other wrongful exclusion of the owner from the possession, is generally the commencement of an adversary possession; which when accompanied by a claim of title may, in progress of time, be ripened into a right of possession, and ultimately into a perfect title.
*187 The statutes of limitation are emphatically statutes of repose, and are dictated by a wise policy, founded upon the presumption against him who has unreasonably delayed the assertion of his demand, and in favour of him who has long exercised the dominion of owner. Their operation is, however, upon a supposition opposite to their policy. They are not made for the protection of wrongdoers; and yet as they apply only between hostile pretensions, and against the apparently better right, they attribute a wrongful inception to the possession and enjoyment which they protect.
The most important English statutes limiting actions for the recovery of real property, are those of 32 Hen. 8, ch. 2, and 21 Jac. 1, ch. 16. I need only notice such of their provisions as bar the right of entry, and the writ of right. The statute of 21 Jac. provides, “ that no person or persons shall at any time thereafter make any entry into any lands, tenements or hereditaments, but within twenty years next after his or their right or title, which shall first descend or accrue to the same; and in default thereof, such persons so not entering, and their heirs, shall bo utterly excluded and disabled from such entry, after to be made.” The statute of 32 Hen. 8, provides, “that no manner of person or persons shall sue, have or maintain any writ of right, or make any prescription, title or claim of, to or for any manors, lands, tenements, rents, &c. or other hereditaments, of the possession of his or their ancestor or predecessor, and declare and allege any further seisin of his or their ancestor, but only of the seisin or possession of his ancestor or predecessor, which shall be seised of the said manors, &c. within threescore years next before the teste of the same writ.”
In Virginia, our acts of limitation conform to these provisions, with some modification in regard to the writ of right. By the revised act of 1819, “no person or persons, who now hath or have, or hereafter may have *188 any right or title of entry, into any lands, tenements or hereditaments, shall make any entry, hut within twenty years after such right or title accrued, and such person shall he barred from any entry afterwardsand, “ In aq writs of right, and other actions possessory, any person may maintain a writ of right, upon the possession or seisin of his ancestor or predecessor, within fifty years; or any other possessory action, upon the possession or seisin of his or her ancestor or predecessor, within forty years before the teste of the writ; but no person shall maintain a real action upon his own possession or seisin, but within thirty years next before the teste of the writ.” These periods of limitation were reduced by the act of February 1881; which as to the right of entry makes fifteen years a bar; and as to the writ of right provides, that “ any person may maintain a writ of right, or any other possessory action, upon the possession or seisin of his or her ancestor or predecessor, within twenty-five years next before the teste of the writ; but no person shall maintain a real action, upon his own possession or seisin, but within twenty years next before the teste of the writ.”
The terms of these statutory provisions,' it will be seen, are directed against the claim of the plaintiff or demandant; but the spirit of them is to protect the enjoyment of the defendant or tenant, after a continued adversary possession during the prescribed periods of time.
Thus, in regard to the right of entry, and consequently the action of ejectment, though the statute prohibits an entry after the lapse of fifteen years from the time that the right or title has accrued; yet an entry may be made, or an action of ejectment, brought, at any distance of time, if a good title can be shewn; unless the other party can prove a continued adversary possession for fifteen years. This cannot be otherwise, in the nature of things, inasmuch as the statute was *189 made to settle, not pacific, but conflicting pretensions; and the matter of controversy being the right of possession, such conflict can only exist from and during the time that the possession has been withheld, without the consent and against the title of him who seeks to recover it.
So, in regard to the writ of right, though the statute bars the remedy, where there has not been seisin or possession of the demandant himself for twenty years, or of the demandant and his ancestors, or predecessors for twenty-five years; yet if the demandant shews a good title, such want of seisin or possession must arise from a continued adverse possession, during such respective periods of time. This is generally true in England, when the mise is joined upon the mere right; and it is universally true in Virginia, whatever may be the form of pleading. Here an actual seisin by taking the esplees or profits, is never necessary to maintain a writ of right, the constructive seisin furnished by the better title derived from the government being all sufficient. Such constructive seisin may be excluded by an adversary possession; but so soon as the adversary possession ceases, the constructive seisin incident to the better title is renewed. Hence the uniform necessity of a continued adversary possession to bar a writ of right, as well as an action of ejectment, and for a longer period of time.
The eifect of these statutes is to render a continued adversary possession, for a sufficient length of time, conclusive in the action of ejectment, against the right of possession; and in the writ of right, against the right of property. This result is so absolute, that such adversary possession is not only a sufficient defence on the part of the defendant or tenant; but where it has existed on the part of the plaintiff or demandant, is a sufficient ground for recovery, against the strongest proof of better title.
The inexorable operation of these statutes, disregarding as they do entirely the original merits -of the con *190 troversy, furnishes a sufficient reason for excluding mere presumptions of the facts which they require, and for exacting clear and decisive proofs of their existence, yyjien sucq pr0ofs are furnished, the enactments should receive a fair and liberal interpretation.
When we look to the elements of an adversary possession, in reference to conflicting claims, and the statutory prescriptive bar, we find it to consist of an exclusive, actual, continued possession, under a colourable claim of title.
It must be exclusive. No rule is more reasonable or better settled, than that where two are in possession, one with and the other without title, the law ascribes the possession to him who has the right. Hence the necessity, when the rightful owner is in actual possession, that he should be disseised or ousted, and continually thereafter kept out by the hostile claimant. When the possession is vacant, though the adverse possession cannot begin by an actual expulsion, still it is indispensable that it should be not the less exclusive in its commencement and continuance. Though the adverse claimant cannot in such case turn out, he must shut out the rightful owner; and such exclusion is equivalent to an actual disseisin, or ouster. It is in effect a disseisin, or ouster of the constructive seisin, or possession conferred by a valid title.
An adversary possession must be actual, as contrasted with a constructive possession. The principle of the prescriptive bar is to treat him, who has had the absolute dominion and enjoyment of the property, for a given number of years, as the true owner, against all proofs to the contrary. It is this absolute dominion and enjoyment which constitutes actual possession; and there can be none other. A man cannot, by mere physical means, keep such property in his exclusive grasp. Possession may be more manifest as to a part, than as to the rest; but in reference to the whole, possession of part is pos *191 session of the entire tract, or parcel. Thus the real or apparent owner dwelling on his farm, is as truly in the actual possession of his woods and waters, as of his pastures, fields and garden. What is the whole, is to be determined by the limits owned or claimed. An intruder without colour of title is, of necessity, confined to his mere enclosures: there must be limits to his possession, and these are all he can have. Such, however, are not the boundaries of the real or apparent owner: his marked or described abuttals shew the extent, not merely of his claim, but of his exclusive sway.
The actual possession, therefore, of the adverse claimant, provided it be exclusive, is not restrained to his enclosure ; but is co-extensive with the boundaries of his colourable title. What then is to determine whether it be exclusive ? I answer the existence or non-existence of an actual possession on the part of the rightful owner. According to the rule already stated, if two be in possession, one with good title, and the other without, the law ascribes the possession to him who has the right. But this rule applies only to the case of actual possession. The constructive possession of the rightful owner, incident to his title, yields to an actual possession of the adverse claimant, but to that only. If, therefore, the adverse claimant enters upon the actual possession of the rightful owner, but does not expel him, the possession which he gains does not outreach the limits of his close. He can make it co-extensive with his claim, or colourable title, only by an actual ouster; for that is indispensable to render it exclusive. But when the possession of the rightful owner is merely constructive, there is nothing to prevent an actual possession of the adverse claimant from being exclusive; for the result is the same whether the rightful owner be turned out or kept out from the premises: in both cases his dominion and enjoyment are alike suspended, and those of the adverse claimant alike unlimited. That *192 the adverse claimant entering and holding under a colourable title, (for example, a patent, deed or other document,) upon a vacant possession, gains the actual posseggj0I1 to tpe whole extent of his boundaries, is sustained by numerous authorities, and contradicted by none that I have seen. Whether, where the possession is vacant, and he enters and holds without colour of title, but claiming the whole tract or parcel of the rightful owner, he gains an actual possession beyond his enclosure, I express no opinion.
An adversary possession must also be actual, in reference to the means by which it is acquired. In that sense, I understand an actual possession to be the occupation, use or enjoyment of the subject matter of controversy, by residence, cultivation, improvement, or other open, notorious and habitual acts of ownership. Of these modes of occupation, use or enjoyment, residence, cultivation and improvement, respectively, while they continue, are usually the most obvious and decisive. But there may be other open, notorious and habitual acts of ownership, of quite equivalent import and effect. Take, for example, the case of a town resident, who, claiming title to a lot or tract of woodland in the vicinity, openly, notoriously and habitually cuts and hauls from it his necessary supplies of fuel; or in like manner makes it a source of revenue, by sales of firewood or timber. Or the case of an unenclosed and unimproved lot in or near a city, devoted by the professed owner to his use or profit, as a coal, or lumber yard, quarry or landing place. There cannot be stronger instances of actual possession than these, and other like cases which might be stated: but they can serve only for the purpose of illustration. When we leave the unquestionable tests of residence, cultivation and improvement, every case must depend, in a great measure, upon its own circumstances, and requires a recurrence to the general principle above stated, of open, notorious and habitual *193 acts of ownership. That principle must moreover be guarded in its application, by talcing care not to confound an adverse claim with an actual possession, and by distinguishing between repeated trespasses, under a pretence, or even belief of title, and the dominion, control and enjoyment of actual or apparent ownership.
That an adversary possession requires actual occupancy, or what is equivalent to it, is sustained by an overwhelming current of American decisions. See the notes and appendix of Tillinghast’s Adams on Eject. There is no case, I think, which when closely examined will be found in opposition to this doctrine, unless it be that of Ewing’s lessee v. Burnet, 11 Peters 41. And if impugned in that case, it is by some of the reasoning, and not by the decision of the court. It was an action of ejectment, in which the verdict and judgment were for the defendant. The property in controversy was a lot in the town of Cincinnati, incapable from the character of its surface of being enclosed, unfit for cultivation, and without any building or other improvement upon it. Its only value was for the sand and gravel ; and the taking and removing thereof the only use to which it was applied. The evidence tended to prove the open, notorious and habitual use of it by the defendant in that way, for upwards of twenty years; and that his use of it by himself and his lessees was exclusive, except occasional trespasses by others, which he prohibited, and for which he sought redress by actions of trespass.
The case came before the supreme court upon exceptions to opinions of the court below, refusing to instruct the jury, that on the evidence the plaintiff was entitled to a verdict; refusing to instruct the jury, that the evidence was not sufficient in law to establish an adverse possession; and charging the jury upon the principles of adversary possession applicable to the case: and the judgment was affirmed. It cannot be doubted that the *194 instructions asked were properly refused; and the charge required the strictest proofs of adversary possession. It explained to the jury how there might be continued ex-elusive occupancy of such property, amounting to adverse possession; but informed them, that the defendant’s “ actual possession of the lot, to protect his title under the statute of limitations, must have been twenty-one years before the commencement of the suit—that suing for trespass on the lot, and speaking publicly of his claim, were not sufficient to constitute an adverse possession—that any possession short of an exclusive appropriation of the property, by an actual occupancy of it, so as to give notice to the public and all concerned that he not only claimed the lot, but enjoyed the profits arising out of it, was not such an adverse possession as the statute requires.”
The opinion of the supreme court, delivered by Mr. Justice Baldwin, undertook (what, under the rules separating the provinces of court and jury in Virginia, would be deemed a work of supererogation here) to discuss the evidence for the purpose of proving, that the circuit court properly refused to instruct the jury, that the plaintiff was entitled to a verdict, and that the defence of adversary possession was not established. And without condemning the principles asserted by the court belorv, the learned judge in the course of his remarks expressed himself thus: “ It is well settled that to constitute an adverse possession, there need not be a fence, building or other improvement made : it suffices for this purpose that visible and notorious acts of ownership are exercised over the premises in controversy, for twenty-one years, after an entry under claim and colour of title. So much depends on the nature and situation of the property, the uses to which it can be applied, or to which the owner or claimant may choose to apply it, that it is difficult to lay down any'precise rule adapted to all cases. But it may with safety be said, that where *195 acts of ownership have been done upon land, which from their nature indicate a notorious claim of property in it, and are continued for twenty-one years, with the knowledge of an adverse claimant, without interruption, or an adverse claim by him, for twenty-one years; such acts are evidence of an ouster of a former owner, and an actual adverse possession against him, if the jury shall think that the property was not susceptible of a more strict or definite possession, than had been so taken and held. Neither actual occupation, cultivation or residence are necessary to constitute actual possession, when the property is so situated as not to admit of any permanent useful improvement, and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim.”
Now, what the court thus said, in relation to acts of ownership sufficient to prove an ouster and continued adverse possession, may be very true in reference to the case before it; was the result of a combination of the circumstances of that case; and required the actual knowledge of them by the other party. But, with great deference, it seems to me, it is not a safe guide, if so intended, as furnishing rules to ascertain what is an adverse possession; for the language employed, if taken abstractly, would serve to indicate an adverse claim, rather than an adverse possession. That acts of ownership on the property indicate an adverse claim, is not, as I humbly conceive, sufficient, unless they amount to an adverse possession, that is, to the occupation, use or enjoyment of the premises. Nor is it sufficient that they shew a continued claim of the party, such as he would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim. Such language strikes me as remarkably loose and indefinite ; and as calculated to occasion dark* *196 ness, instead of light; which, I think, must be the re-suit of any attempt to give it a practical application, as a test of adverse possession.
The qxxestion whether the possession of a party be actual, often arises, upon conflicting titles, under the operation of the rule, that possession of part is possession of the whole. Where the abuttals of the conflicting titles are the same throughout, the question is of easy solution, upon the principles already stated: but it is sometimes attended with difficulty where the abuttals are different, in the whole or in part. There the limits of the one title are either embraced in the broader limits of the other; or the limits of the two conflict, and cause an interlock. Take, for example, the case of two patents thus interfering. If the junior patentee settles within the boundaries of his grant, but outside those of the older patent, in such case, I think, he gains thereby no actual possession of the land in controversy, whether the possession of the older patentee be actual, or constructive only. For though where there is no controversy, the rule that possession of part is possession of the whole, is to be taken in reference to the entire tract; yet where there is a conflict of titles, it is to be taken in reference to such conflict. And without actual possession of some part of the land in controversy, the junior patentee can gain no possession of the subject, against the better right of the older patentee. This, I consider, perfectly just and reasonable; for otherwise the lawful owner might be disseized not only without his knowledge, but without the means of acquiring it.
On the other hand, where the older patentee is settled within his own limits, but outside those of the junior patentee, and the latter enters and settles upon the land in controversy, the question is presented, whether it is a case of mixed possession, or of exclusive possession, on the part of the junior patentee. It seems to me that, according to the spirit of the statute of limitations, the *197 junior patentee ought to be regarded as in the actual adversary possession of the land in controversy. The senior patentee knows, or ought to know, his own boundaries; and that his adversary has settled within them, claiming and exercising the dominion and control of ownership over the part in controversy. And if, under these circumstances, he is quiescent, and fails to assert his right to the land in controversy by action or entry, he is in effect excluded or ousted therefrom. There can, in such case, be no other ouster, unless the junior patentee be required to go beyond his own boundaries, for the purpose of effecting it, without the shadow or pretence of title. The current of authorities, it is true, is against this proposition: but the decisions on the question in other states, founded upon general reasoning, I regard as inapplicable in Virginia; where we have a statute providing, that possession of part shall not be possession of the whole, where an actual adversary possession is proved. This statute was surely not passed merely for the protection of squatters; and must have been intended to embrace the case of an actual possession of the rightful owner beyond, and of the adverse claimant within, the limits of the part in controversy. Its policy, I regard, as wise and salutary; requiring nothing but a reasonable vigilance on the part of the rightful owner, and necessary for the repose of bona fide settlers in our extensive regions of wild and uncultivated lands. If it should be said, that this statutory provision operates both ways, and prevents the junior patentee’s possession of part of the land in controversy from being a possession of the whole land in controversy, inasmuch as the older patentee has an actual adversary possession; 1 answer, that, in the case supposed, the older patentee’s actual adversary possession is not of any part of the land in controversy; and his constructive possession must yield to the adversary possession of the junior patentee, unless it can be maintained, as, I think, *198 it cannot, that an entry and settling upon land in controversy, under a claim thereto by the definite boundaries of a colourable title, is not an ouster of the adverse party to extent 0f those boundaries, when he has no adverse possession within them. The extent of a disseisin must in the nature of things depend, in a great measure, upon the intent of the disseizor and the acquiescence of the disseizee.
If follows from what has been said, that wild and uncultivated lands cannot be made the subjects of adversary possession, while they remain completely in a state of nature. A change in their condition, to some extent, is therefore essential; and the acts by which it is effected are often the strongest evidence of actual possession. Without such change, accomplished or in progress, there can be no residence, cultivation or improvement; no occupation, use or enjoyment. Evidence short of this may prove an adversary claim; but, in the nature of things, cannot establish an adversary possession. Nor is there any reason for relaxing the rules of law; on this subject, in behalf of the adversary claimant of such property. There ought to be no presumption in his favour against the better title. It is in vain for him to say, that he has had all the possession of which the property was then susceptible; for that would lead to a constructive possession, which is only attributable to the rightful owner.
In controversies concerning wild and uncultivated lands, the usual marks of actual possession are concurrent improvement, cultivation and residence; the two former, of course, at least in the earlier stages of the prescriptive period, to a very limited extent. But the degree is immaterial, if the acts be real and bona fide. More or less is unimportant, if there be enough to indicate apparent ownership. And the actual possession thus gained, if exclusive, extends throughout the borders of the colourable title, whether those be large or small. . In New York, the doctrine by which occupancy *199 of part may give adversary possession of the whole, has been held to be applicable only to small, and not to large tracts; because of the usual notoriety in regard to the former, and the probable want of notice, on the part of the rightful owner, in regard to the latter. Jackson v. Woodruff., 1 Cowen 276. But it seems to me, that the distinction between large and small is too indefinite for practical utility; and that the probability of notoriety or want of notice are considerations, which though entirely proper in determining what acts are of such a nature as to give actual possession, yet they cannot affect the application of them to the particular subject of controversy. To make a case turn upon the probability or improbability of notice, under the particular circumstances, would make it a question of constructive, and, by consequence, of actual notice also ; whereas the doctrine of adversary possession rests upon no such uncertain and precarious grounds. The rule in New York is, I believe, peculiar to that state. In other states, and in the supreme court of the United States, the doctrine that adversary possession of part extends to the whole limits of the colourable title, when not opposed to an actual possession of the rightful owner, is applied freely to extensive boundaries. Barr v. Gratz, 4 Wheat. 213; Clarke’s lessee v. Courtney, 5 Peters 319.
When the defendant or tenant has succeeded in proving an adversary possession, and in furnishing prima facie evidence of its continuance for a sufficient length of time ; it is then incumbent on the plaintiff or demandant to shew that the continuity has, in fact, been interrupted or broken. This may be done by proof of an abandonment of the possession, or a surrender of its adversary character; or of entry and possession, or of entry alone, on the part of the plaintiff or demandant.
Entry is a remedy given by law to the rightful owner, in order to obtain or regain the possession; and though not followed up by an actual possession, yet if made *200 with due formality, is an answer to the defence of ad- . . , versary possession, in an action or ejectment; so as to require a new adverse possession from that time. This ;s restrained in England, by the stat. 4 Ann. ch. ig^ to cases in which an action is commenced within one year from the date of the entry; but we have no such statute in Virginia. If the entry be followed up by an actual possession, but without expulsion of the adverse claimant, then the case is presented of a co-existing or mixed possession, which while it continues prevents the operation of the statute. But if the entry be not congeable or allowable by law, for example when barred by the statute, though it be followed up by an actual possession, it does not affect the defence of adversary possession, in the action of ejectment. It is otherwise, however, in a writ of right; Bolling v. Mayor of Petersburg, 3 Rand. 510; for that remedy not involving the lawfulness of the possession, but a mere comparison of titles, the defence requires an adversary, and, of course, exclusive possession, for a sufficient length of time to bar the right of property.
In an old and densely peopled country like England, disputes which turn upon the question of actual possession can but seldom arise; and accordingly we find the English books quite meagre, upon so much of the doctrine of adversary possession. But, in our new country, where civilization has had to invade the wilderness, and subdue its savage haunts, much confusion in the limits of possession, as well as title, has sprung from hardy enterprise and adventurous speculation. This has given rise to innumerable controversies; and the American cases grieve the labour of research, not by the absence, but the excess of authority. Hence I have thought it necessary to seek the guidance of principle through the labyrinth of adjudication.
The cause before us turns chiefly upon the propriety of the instructions given by the court to the jury on *201 the trial; and these must he considered in reference to the evidence as stated in the bills of exception. It appears therefrom, that the land in controversy is a tract granted by the patent from the commonwealth under which the tenant claims, and the whole of which is embraced in the much broader limits of the older patents under which the demandants claim. And by a comparison of the instructions with the evidence, the fair inference is that the opinions of the court expressed by the instructions had reference to the land in controversy, as being unimproved, uncultivated and completely in a state of nature; or, at least, that the jury were not made to understand that proof was requisite of any change in its condition by clearing, building or otherwise. In considering the instructions, I shall, without repeating them, state and comment upon the propositions which they assert, as I understand them.
The first instruction embraces the following propositions :
1. That in the state of facts above mentioned, if a junior patentee, or those claiming under him, enter upon the land in controversy, claiming title thereto under their grant, such entry and claim give an adversary possession, and constitute an ouster of the constructive possession of the older patentee, or those entitled under him, to the extent of the boundaries of the younger grant. I cannot assent to the correctness of this proposition. There can be no ouster of the constructive possession of the older patentee, but by an actual adversary possession: and of this, wild and uncultivated lands, completely in a state of nature, are not susceptible. An adversary possession of them can only be acquired by acts producing a change in their condition. When the books speak of an ouster by entry upon, with claim of title to such lands, they do so in contemplation of an entry into and a holding of the actual possession, by the *202 means requisite for that purpose. A contrary doctrine woul(l lead to the strange result of an owner’s being deprived of his land, by a mere formal claim of his advergary without title. The error of this proposition pervades the whole of the instructions; and therefore, in order to the examination of the other propositions which they contain, it is necessary to suppose, contrary to the fact, that they contemplate an ouster by acts of the nature above mentioned.
2. That an ouster of the constructive seisin of a demandant, or those under whom he claims, has the effect of defeating the same, unless the demandant (if he claims under an ancestor or predecessor) proves a subsequent actual entry by such ancestor or predecessor upon, and taking possession of, the premises, within twenty-five years before the institution of the suit. This proposition I consider erroneous. The constructive seisin or possession of an elder patentee, or those claiming under him, is not defeated, but only suspended, by an ouster ; and can only be defeated by a continued adversary possession, for the length of time prescribed by the statute of limitations. If the adverse possession be interrupted or broken during that time, the constructive seisin of the elder patentee, or those claiming under him, is thereby revived; and enables the demandant, if he holds the title, to recover the property, without an actual entry, even although the ouster was from an actual possession.
The second instruction embraces the following propositions :
1. That a patent from the commonwealth for lands, not previously granted, confers on the patentee, and those deriving title from him, a constructive or legal seisin, which enables them to maintain a writ of right. This proposition is correct upon principle, well sustained by authority, and conceded by the appellants’ counsel.
*203 2. It is equally true that, though a demandant, or those under whom he claims, have been ousted of their constructive seisin of the land in controversy, yet if the adversary possession of the tenant, or those under whom he claims, gained by such ouster, be afterwards doned, the constructive seisin of the demandant, by virtue of his older grant, is thereby revived, and will enable him to maintain his writ of right. But this is qualified by another proposition, to wit:
3. That such constructive seisin must have been revived within twenty-five years before the institution of the suit. Now, as the revival of the constructive seisin results from the abandonment of the adversary possession, it follows, if the proviso be correct, that the abandonment must have been within the twenty-five years; and therefore that an abandonment of the adversary possession before the twenty-five years would avail the demandant nothing. This cannot be so. The constructive seisin, when once revived, continues until again suspended by a new adversary possession.
The third instruction contains the following propositions :
1. A renewal, by implication, of the second erroneous proposition of the first instruction, that an ouster of the constructive seisin of the demandant, or those under whom he claims, has the effect of defeating the same; unless the demandant (if he claims under an ancestor or predecessor) proves a subsequent actual entry upon, and taking possession of, the premises, within twenty-five years before the institution of the suit.
2. That such actual entry and taking possession must be of the land within the limits of the defendant’s grant, that is of the land in controversy: unless the adversary possession of the tenant, or those under whom he claims, had been previously abandoned.
3. In case of such abandonment an actual entry and taking possession of the land outside of the tenant’s grant, but within the demandant’s grant is sufficient.
*204 The whole of this third instruction, taken as a whole, j consider untenable. It is founded upon the erroneous idea that an actual entry and taking possession by the demandant, or those from whom he derives his title, is, un¿er any circumstances, necessary; except for the purpose of breaking the continuity of an adversary possession of the tenant, or those under whom he claims. When necessary for that purpose, it is true, it must be of the land in controversy, and not merely outside the tenant’s grant; because it was of the former only that the demandant, or his ancestor or predecessor, was disseized or ousted. And it is also true that an entry alone is not sufficient; there must be an actual possession, by the requisite means, for reasons already stated.
The fourth instruction comprises the following propositions :
1. That after an ouster it is not necessary to a continued adverse possession, so as to bar, under the statute of limitations, a demandant’s recovery, that there should be proof of an actual and continued occupancy of the premises, or a cultivation of the soil, or the erection of houses or other improvements thereon. This, I consider substantially correct: the continued use or enjoyment of the premises, by open, notorious and habitual acts of ownership, I consider equivalent to occupancy by residence, cultivation or improvement.
2. That if the jury believe from the evidence that the tenant, and those under whom he claims, did, from the time of such ouster, continue to exercise open and notorious acts of ownership “ over” the premises, they might infer therefrom a continued adverse possession against the demandant. This, I consider erroneous. It is an adoption of one of the objectionable criteria of adverse possession stated in the case of Ewing's lessee v. Burnet; and without the explanation furnished by the peculiar circumstances of that case; or requiring, as in that case, that the acts of ownership should be done *205 ‘upon” the land ; or, as in that case, that the jury should believe from the evidence, that the property was not susceptible of a more strict or definite possession than had , , , t t i i been so taken and held.
3. That for the purpose of aiding the jury, in determining what would constitute the exercise of such open and notorious acts of ownership, amounting to an adversary possession, the jury should take into consideration such acts of the tenant, and those under whom he claims, as are consistent with, and indicate a notorious claim of the premises, and which from their nature could not have been exercised without such claim. I cannot approve of this proposition. It is an adoption of another of the objectionable criteria of adverse possession stated in the case of E icing’s lessee v. Burnet; and without the qualification in that case, that the property was so situated as not to admit of any permanent useful improvement.
4. That for the purpose of further aiding the jury as aforesaid, the facts, if proved to their satisfaction, that the tenant, or those under whom he claims, claimed the title to the premises for more than twenty-five years prior to the institution of the suit, occasionally visited the land, had it entered upon the tax books, paid the taxes thereon, prohibited waste and trespasses from being committed upon it, sold and permitted timber to be taken off the land, made open sales of the land, took surveyors upon it and openly surveyed it, executed conveyances therefor and placed them upon the record— these and other acts of the tenant, and those under whom he claims, of the same nature, if proved to the jury, became proper for their consideration, for the purpose aforesaid. This proposition, I consider erroneous.
In the first place, it seems to me objectionable, because it does not discriminate properly between the relative functions of the court and the jury; and this objection applies also to the last proposition. What facts *206 amount to an adverse possession is a question of law, for .the instruction of the court to the jury. Whether the evidence establishes such facts is a question of fact ^ ^he jury, whose duty it is to conform to the opinion 0f ^he court upon the law of the case. To instruct the jury that certain designated facts were proper for their consideration, upon the question of adversary possession, was to submit to the jury the whole question of law and fact. It gave them no information whatever; and amounted only to this, that it was proper for them to consider the evidence before them. Its probable tendency was to mislead them. Under this instruction, it was competent for the jury to decide, without violating the direction of the court, that the payment of taxes, or a sale of part of the land, amounted to adversary possession.
In the next place, I consider the proposition objectionable, because the facts designated, with a single exception, whether taken separately or collectively, had no tendency to prove an adversary possession, except so far as they indicated an adversary claim. But they were submitted to the jury upon the question of actual possession also. They were all perhaps entirely proper, when an actual possession was proved, for the purpose of shewing its adversary character: but an adversary claim merely, however open and notorious, and whether on or off the premises, does not give an actual possession. It does not shew an occupation, use or enjoyment of the premises. In truth, an adverse claim seems here to have been confounded with an adverse possession. A continual claim is a remedy which the law, in some cases, gives to the true owner, to preserve his right of entry: but upon what principle can it be regarded as conferring actual possession upon him who has no title ? Payment of taxes, prohibition of trespasses, surveys of the land, sales and conveyances of it; though they may serve to shew a claim of title, are not evidence *207 of actual possession. Jackson v. Myers, 3 Johns. R. 383; Dawson v. Watkins, 2 Rob. R. 259; Tillinghast’s Adams on Eject. 43, n. Even the cutting and selling of timber by the tenant himself, or by his authority, is but a transient trespass, unless habitual: Tillinghast’s Adams on Eject. 493, appendix: and surely a sale of part of the land gives the vendor no possession of the residue.
The fifth instruction asserts it to be unnecessary that a demandant, or those under whom he claims, should have had knowledge of the facts relied on by the tenant to prove an adversary possession; if such facts were of such a nature that the demandant, or those under whom he claims, by the exercise of that care and attention and vigilance, which it is expected that every prudent man would exercise over his property, might reasonably be expected to have acquired a knowledge thereof. This proposition is, in my opinion, erroneous. It tends to introduce new, and it seems to me fallacious tests of adversary possession. Its purport is to require notice to the demandant, or those under whom he claims, of the acts of ownership in question, unless the want of notice be attributable to their negligence. But if the facts amount to actual possession, the demandants’ want of notice cannot prevent it: if they do not amount to actual possession, then the demandants’ negligence cannot give it. It is enough that possession be evidenced by actual occupation, or what is equivalent to it: and less than this is not enough. Acts of ownership are required to be open and notorious, not in reference to the fact of notice to the opposite party, or the public; but as contradistinguished from what is furtive, clandestine or secret. And the general knowledge of the neighbourhood, or the particular knowledge of the other party, can be in nowise material, except for the purpose of repelling the imputation that they were underhand or surreptitious.
*208 My opinion, therefore, is, that the court ought not to jiave given the instructions aforesaid; but, in lieu thereof, ought to have instructed the jury to the effect fol- , lowing, to wit:
\ jf the jury shall believe that the grant from the commonwealth, under which the tenant claims, embraces the land in controversy; and that the same is also embraced by the older grants from the commonwealth under which the demandants claim; and that the demandants have acquired title to said land, under said older grants: then that such title is sufficient to enable the demandants to maintain their writ of right, in the absence of a sufficient legal defence on the part of the tenant.
2. If the demandants, or those under whom they acquired title, had not actual possession of the land in controversy; and the tenant, or those under whom he claims, entered thereupon, claiming the same under their said younger grant, and took and held.actual possession thereof, by residence, improvement, cultivation, or other open, notorious and habitual acts of ownership, and so continued the same under their said claim, for more than twenty-five years before the commencement of this suit, then that the demandants are, by force of the statute of limitations, barred from maintaining their writ of right.
3. The tenant cannot sustain his defence of continued adversary possession, if it shall appear from the evidence that such possession was, within said period of twenty-five years, abandoned by him, or those under whom he claims.
4. The tenant cannot sustain his said defence of continued adversary possession, if it shall appear from the evidence, that the demandants, or those under whom they claim, did, within said period of twenty-five years, enter upon the land in controversy, and take actual possession thereof, by such means as are mentioned in the second instruction.
*209 5. That such entry of the demandants, or those under 'whom they claim, upon, and possession of the land within their older grants, not embraced by the younger . . , t r grant of the tenant, could not have the eiiect oí an en~ try upon and possession of the land in controversy.
The views above presented of the instructions actually given will serve to shew, that the instruction asked for by the demandants, and also the instruction asked for by the tenant, were properly refused.
I think there is no error in the opinions of the court stated in the first and second bills of exception taken by the tenant.
It seems to me that the judgment of the circuit court ought to be reversed, and the cause remanded for a new trial, with a direction that the instructions given by the court on the former trial are not to be repeated.