WRIGHT, J.,
delivered tbe opinion of tbe Court.
1. Tbe objection to tbe Register’s certificate upon ;be deed from Duguide and Curtis, to the plaintiff be *41 low, bas nothing in it. The Courts will take judicial notice of the registers of counties. Mr. Greenleaf (1 Green. Ev., § 6) says, Courts will take notice of marshals and sheriffs, and the genuineness of their signatures.
2. The next objection, is, to the description of the land in this deed; that it is described as grant, No. 4795, to John Roberts, when it appears to be grant No. 4794, to Thomas B. Eastland; and so that no title passed. But we think this position also untenable; because the land is, in other respects, sufficiently identified and described. The entry was in the name of John Roberts, - and the true number of the grant, no doubt, is 4795. 4 Comyn’s Dig. Title Grant, (G. 5.)
3. The Court was asked by Fancher’s counsel, to charge the jury, that if Elijah Frost was in the possession of the disputed land, and his son, Thomas Frost, was living with him, the law adjudged the possession to be with the legal title. This, the Court refused to do. But instructed the jury to look to the proof, and if they were satisfied that Elijah Frost, the father, was in possession in his own right, and claiming for himself, and his son Thomas was living with him, as one of the family, then the possession was that of the old man, and not that of Thomas; and if, after the old man left, Thomas took possession, and sold to, or put defendant in the possession, he cannot couple the possession of the old man, without color of title, with that of Thomas, to make out the seven years actual adverse possession. Nor would the possession of the old man, in his own right, or for himself, be the possession of Thomas, who *42 was living in. the family, and as one of the children of ■old man Frost.
In this part of the charge, there is a material error. It is well settled, that in the case of a mixed, or joint possession of land, slaves, or other estate, the law adjudges the possession to be with him who has the superior title. And this rule applies, as strongly in favor of the children, and other members of the father’s family, as of strangers. And if they actually reside with him upon the property, it can make no difference that he is the head of the family, claims the estate for himself, and in his own right, and apparently controls it. If he have not the title, and it be in his children, the law fixes the possession with them. Wheeler on Slavery, 90, and authorities cited: 4 Wheat., 213; 3 Mass., 215; 10 do., 146; Brimmer vs. Long Wharf, 5 Pick., 131. In this case, Thomas Frost had a grant from the State of Tennessee, dated in 1846, which embraced the land in dispute; and under which, it is proved, he had claimed it for more than nine years; and during this time he and his father actually resided together upon it. It is said, the old man Frost owned two hundred acres, embracing the land in dispute; but no title in him is shown, and there is no proof of it; and this two hundred acres is embraced within the grant of six hundred and forty acres to Thomas Frost.
It is true, that one witness does speak of a conversation between defendant in error and Thomas Frost, in which the latter admitted his title to one-half or three-fourths of an acre of the land in dispute, and said he would not plead the statute of limitations, etc., but it does not appear when this was; and the other evidence *43 in tbe cause shows, clearly, that he had possession of it, and claimed it under the six hundred and forty acre grant. Eancher claims under Thomas Erost; and it is most probable, from an examination of the facts in’ this record, that the charge of the Court did most materially prejudice his defence. How the facts may appear, upon another trial, we cannot say. Eor this error in the charge, we are constrained to reverse the judgment. Judgment reversed, and cause remanded for another trial.