**Wytheville.**

## HARMAN v. RATLIFF AND OTHERS.

### JUNE 25, 1896.

#### Absent, Harrison, J.

1. POSSESSION OF LAND—*Uncleared Lands—Constructive Possession—Actual—Adverse.*—The constructive possession of the rightful owner of land yields only to the actual possession of an adverse claimant; but while lands remain uncleared or in a state of nature, they are not susceptible of adverse possession against an older patentee, except by acts of ownership effecting a change in their condition which, from their nature, indicate a notorious claim of title, and to constitute such adverse possession there must be occupancy, cultivation, improvement, or other open, notorious, and habitual acts of ownership.

2. CONFLICTING PATENTS—*Possession of one Tract Claiming Adjacent—Adverse Possession.*—Where the State has, by conflicting patents, granted uncleared lands, which adjoin the home tract of the junior patentee, the possession by the junior patentee of his home tract claiming possession of the land granted by the conflicting patents, is not extended to the lands thus granted so as to give him adverse possession as against the senior patentee.

Error to a judgment of the Circuit Court of Buchanan county, rendered September 26, 1893, in an action of ejectment, wherein the plaintiff in error was the plaintiff, and the defendants in error were the defendants.

*Reversed.*

The opinion states the case.

*Fulton & Coulling,* for the plaintiff in error.

*E. S. Finney,* for the defendants in error.

CARDWELL, J., delivered the opinion of the court.

This is an action of ejectment brought in the Circuit Court of Buchanan county by the plaintiff in error against the defendants in error, and the verdict was for the defendants. A motion was made by the plaintiff to set aside the verdict because it was contrary to the law and the evidence, or was without evidence to support it; which motion was overruled, and this ruling of the trial court constitutes the error assigned in the petition of plaintiff for the writ of error awarded him.

It is admitted here that the plaintiff at the trial connected himself with the Commonwealth by a regular chain of title to the land in controversy, except, perhaps, as to 146 acres, and had the right to recover, unless the defendants made good their defence of adverse possession for more than ten years prior to the institution of this action. The grant of the Commonwealth, to which plaintiff traced his title, was issued to E. F. Harman (plaintiff's father) and one E. Bender, March 1, 1859, for 2,200 acres, and this action was brought to recover a portion of the land within the boundaries of this grant, the metes and bounds of which were set out in the declaration, and embraced about 1,100 acres, a part of which was then in the possession of the defendants. The defendants to make out their defence under the statute of limitations, introduced in evidence:

1st. A grant of the Commonwealth to one Bartly Compton, dated March 1, 1847, for fourteen acres, which lies within the boundaries of the grant under which plaintiff claims.

2d. A grant of the Commonwealth to the defendant, Silas Ratliff, dated August 1, 1862, for 465 acres, which also, with the exception of a very small portion, lies within the limits of the grant under which plaintiff claims, and includes the fourteen acres covered by the Compton grant.

3d. A grant of the Commonwealth to defendant, Silas
Ratliff, dated also August 1, 1862, for 1,080 acres, of which
about ninety-two acres interlocks with plaintiff's land.

The grants to Ratliff show that the survey by which his
grant of the 465 acres was made bears date February 28,
1861, and the one by which his grant of the 1,080 acres was
made, March 1, 1861.   Silas Ratliff was also examined as
a witness for the defence, and his testimony, as well as it can
be understood in the printed record, is as follows: "That he
had possession of the fourteen acres at the time and before
the survey of the two other tracts, and that at the time of
the survey of the two tracts—465 and 1,080 acres—he took
possession of both tracts, and had had possession of both
since his warrant was laid on them, and since the surveys;
that he conveyed the fourteen acres and about all of the 465
acres    *    *    *    *    to his daughter, Elizabeth Ratliff, the
wife of Fed. Ratliff, and that he did not contend for what
he had conveyed to her; that in the winter of 1864, he (wit-
ness) cleared a part of eight acres of the 465 acre-tract and
put same under fence, and cultivated and used it since, but
fence was of logs and brush, and, after cultivating the eight
acres four or five years, he let the fence go down and did
not use the land for four or five years; that he did no other
clearing upon the 465 acres, but that his and other people's
cattle *run* on same; that his daughter and her husband were
never on the eight acres; that in the fall of 1862 Fed. Rat-
liff and wife moved on the fourteen acres and built on it;
that they remained in the house on the fourteen acres until
1872, when they moved and built on the 465 acres about 300
yards from the fourteen acres    *    *    *    *    *    *; that in
the fall of 1875 they moved away to Dismal and raised a
crop, leaving one Linzie Yates in the house while they were
gone; that he (defendant) never cleared or fenced any of the
1,080 acre-tract, but about seventeen years ago he leased a
part of it to one Shortridge."   On cross-examination, wit-

ness stated "that no timber was cut on the land; that
the only clearing he made of the 465 acres was the eight
acres mentioned in chief, and he had cleared and fenced no
other portion thereof; that a lease was temporarily granted
about seventeen years ago by him of the 1,080 acres, and it ·
was about two miles from the Harman land." He also tes-
tified "that the fourteen acres, the 1,080 acres, and the 465
acres and his home tract were adjacent and contiguous, and
that he was living on his home tract when the surveys were
made, and had continued to live there since." This is all the
evidence adduced for the defence.

E. F. Harman died in a northern prison during the win-
ter of 1864–5, leaving three infant children, the plaintiff and
two others, and there having been a partition of the land in
the grant to Harman and Bender, between Bender and the
children of Harman, and the plaintiff having succeeded to
the right of the other two children, brought this action to
the March rules of Buchanan Circuit Court, 1887. At that
time one of these children was twenty-nine years old, another
(plaintiff) twenty-five, and the other and youngest twenty-
three. Neither the plaintiff, nor those under whom he claims,
ever had actual possession of the lands in controversy, but
constructive possession only, and as constructive possession
of the rightful owner yields to an actual possession of the
adverse claimant, and that only, it will be readily observed
that a decision of this case turns on whether or not the de-
fendants had such adverse possession of the land as caused
the statute of limitations to begin to run in their favor prior
to the statute commonly called the stay law which went into
force April 17, 1861, and expired January 1, 1869; for, if this
is not the case, the statute did not begin to run in favor of
the defendants prior to the death of E. F. Harman, the se-
nior patentee, and therefore did not begin to run against his
children till they attained their majority (sec. 2917 Code of
Va.), and as this action was brought within ten years from

the time that these children attained their majority, the statutory period of ten years necessary to make the adversary possession of the defendants a bar to plaintiff's recovery had not expired, unless defendants' adverse possession began prior to April 17, 1861. In fact, this seems to be conceded in the argument. Without actual possession of some part of the land in controversy the junior grantee can gain no possession of the subject against the better right of the older grantee. *Taylor* v. *Burnside, &c.,* 1 Gratt. 192; *Overton, &c.* v. *Davidson,* Id. 211; Hutchinson on Land & Titles, sec. 364.

While lands remain uncleared, or in a state of nature, they are not susceptible of adverse possession against the older patentee, unless by acts of ownership effecting a change in their condition, and to constitute adverse possession there must be occupancy, cultivation, improvement or other open, notorious, and habitual acts of ownership. *Koiner* v. *Rankin.* 5 Gratt. 420; *Taylor* v. *Burnside,* and *Overton* v. *Davidson,* *supra.*

In the case last cited it was said by this court that where lands have been granted by the Commonwealth to different persons, by conflicting patents, the junior patentee cannot, under any circumstances, disseise or oust the older patentee from, or acquire an adversary possession of, the land in controversy, but by the actual occupation of some part thereof, or the use or enjoyment of some part thereof, by acts of ownership equivalent to such actual occupation; and that while such patented lands remain complete in a state of nature, they are not susceptible of a disseisin or ouster of, or adversary possession against, the older patentee, unless by acts of ownership effecting a change in their condition.

This doctrine is fully sustained by this court in *Turpin* v. *Saunders,* 32 Gratt. 27, in an able opinion by Staples, J., in which he quotes with approval from the opinion of Allen, J., in *Dawson* v. *Watkins,* 2 Rob. 259, where it was said: "To operate a disseisin of one having right, the entry should be

made under a claim of title with the intention of taking possession, and be accompanied with such visible acts of ownership as from their nature indicate a notorious claim of property in the lands.    To hold otherwise, would be to establish a principle by which every proprietor of vacant lands might be disseised without his knowledge, or even the possibility of protecting himself." See also Hutchinson on Land Titles, section 365, and cases cited.

Turning then to the proof adduced by defendants of their adversary possession of the land in controversy, set out at length above, it will be readily seen that the only evidence they adduced to show actual possession of the land, or acts of ownership equivalent to actual occcupation of the land or some part of it, prior to April 17, 1861, the beginning of the period in which the stay law was in force, is the statement of the defendant Silas Ratliff, " that he had possession of the fourteen acres at the time and before the survey of said two tracts, and that, at the time of the survey of the two tracts, 465 and 1080 acres, he took possession of both said tracts; he had had possession of said two tracts, 465 and 1080 acres, since his warrant was laid on same and since the survey of same." * * * * * He says nothing whatever of any visible acts of ownership effecting a change in the condition of the land, which from their nature indicated a notorious claim of title to the property.    Recognizing doubtless, the insufficiency of this evidence to establish such actual possession of the land as started the statute of limitations to run against the senior patentee prior to April 17, 1861, the witness testified that the fourteen acres, the 1080 acres, the 465 acres, and his home tract were adjacent and contiguous, and that he was living on his home tract when the surveys were made, and had continued to live there until the then present time; and it is argued on his behalf here that because he had possession of his home tract, and the fourteen-acre tract, both adjacent and contiguous to the

two other tracts of 465 and 1080 acres on March 1, 1861, his entries on the 465-acre tract February 28, 1861, and on the 1080-acre tract March 1, 1861 " gave color of title to enter into adverse possession upon these lands, and his right to possession having accrued to him by the entries and surveys, and these lands being adjacent and contiguous to his home lands, his possession of the home lands and the fourteen-acre tract, became enlarged to the extent of the boundary lines of the 465 and 1080-acre tract." *Overton's heirs* v. *Davidson, supra,* is cited to sustain this position, and that case does decide that lands granted to the same person by several patents must be regarded as forming one entire tract, and that where the land in controversy is embraced by conflicting grants from the Commonwealth to different persons, and the junior patentee enters thereupon and takes and holds actual possession of any part thereof, claiming title to the whole under his grant, such adversary possession of part of the land in controversy, is an adversary possession of the whole, to the extent of the limits of the younger patent; and to that extent, is an ouster of the seisin of the elder patentee, if the latter has no actual possession of any part of the land within the limits of his grant. To the same effect is the decision of this court in *Stull* v. *Rich Patch Iron Co.,* 92 Va. 253, but neither of these cases sustains the doctrine here contended for; and as no possession of the fourteen-acre tract is shown to have been in the defendants, nor any acts of ownership done by them on this land till the fall of 1862, this position of the defendants could only be maintained upon the theory that the possession of Silas Ratliff of his home tract when the surveys of the land embraced in his patents for the 465 and 1080 acres were made, enlarged at once to the extent of the limits of his patents. To sustain this doctrine would be to throw wide open the doors for gross injustice to claimants under a senior patent, and establish a principle by which every proprietor of va-

cant lands might be disseized without his knowledge, or even the possibility of defending himself.

Stress is also laid by counsel for defendants in error upon the statement made by T. W. Ratliff, a witness introduced by plaintiff, that defendant had some of the land inside of plaintiff's boundary in possession ever since he knew anything of the land, for twenty years or more, but this witness testifying in the fall of 1893, also fails to state the character of the possession, and if he had, it would avail nothing to the defendants. There is no proof of actual adverse possession in the defendant of any part of the land in controversy, as we have seen, prior to April 17, 1861, and whatever may have been the acts of ownership exercised by them after that date they avail nothing, as this action was brought within ten years after the children of E. F. Harman, deceased, arrived at the age of twenty-one years. The proof is that the house was built on the fourteen acres in the fall of 1862, and the eight acres cleared on the 465-acre tract, and enclosed with log and brush in the fall of 1864, and although E. F. Harman may have been living at both of these periods, the stay law was then in force, and as he could bring no action the statute of limitations could not run against him. Acts of 1861-2, p. 99; *Trotter* v. *Cassady*, 13 Amer. Dec. 183. It seems, therefore, clear that the defendants failed in their proof to sustain the defence of the statute of limitations relied on.

The verdict of the jury was in this form: " We, the jury, find for the defendant," and it is contended by counsel for plaintiff in error that this is not in form as required by section 2746 of the Code of Va., which provides that if the right of the plaintiff is proved as to part only of the premises, the verdict shall specify that part, &c., and that for this reason also it was error in the lower court to overrule the motion to set aside the verdict; but, with the view that we have

taken of the case, it is unnecessary to consider this assignment of error.

We are of opinion that the evidence is plainly insufficient to sustain the verdict of the jury, and the judgment of the Circuit Court of Buchanan county is therefore reversed and annulled, and the cause will be remanded to that court for a new trial to be had in accordance with the views expressed in this opinion.

*Reversed.*