Richmond.

STULL v. RICH PATCH IRON COMPANY.

NOVEMBER 21, 1895.

1. EJECTMENT—*Entry on Part, Claiming the Whole—Adverse Possession.*—
   Where one, under color of title, enters into possession of a portion
   of smaller tract of land, claiming the whole, which smaller tract is
   part of a larger tract, of no part of which the owner is in the actual
   possession, his possession is co-extensive with his boundaries, and
   he thus becomes in the actual adverse possession of the whole boun-
   dary claimed by him, and the statute of limitations then commences
   to run in his favor as to the whole tract covered by his title papers,
   even though the title conveyed by the writing under which he claims
   is worthless. And the subsequent entry by the owner of the larger
   tract into possession of a part thereof, outside the boundaries of the
   smaller tract, claiming the whole, before the necessary time has
   elapsed to make good the title of the smaller tract under the statute
   of limitations, does not operate to oust or dispossess the claimant
   of the smaller tract.

Argued at Staunton.    Decided at Richmond.

Error to a judgment of the Circuit Court of Alleghany
county, rendered August 29, 1894, in an action of ejectment
wherein the defendant in error was the plaintiff, and the
plaintiff in error was the defendant.

*Reversed.*

This was an action of ejectment instituted in the Circuit
Court of Alleghany county by the Rich Patch Iron Company
against A. M. Stull, to recover possession of a tract of 9,000
acres of land. The defendant pleaded not guilty, and filed

a disclaimer as to all of the land except a tract of 178 acres. On the first trial there was a verdict for the defendant, which the trial court set aside; at a subsequent term the jury failed to agree and were discharged; and at the last trial the plaintiff demurred to the defendant's evidence, the court compelled the defendant to join in the demurrer, and entered up judgment for the plaintiff, and the defendant excepted.

At the first trial various objections were made by the defendant to the rulings of the trial court, including an objection to the action of the court in setting aside the verdict of the jury and granting a new trial to the plaintiff; but the court overruled all the objections and awarded the new trial, and the defendant excepted, and set out all of the evidence in one of the bills of exception; and, by consent of counsel, " it was agreed that said bills of exception may be signed, sealed, and made a part of the record within sixty days from the rising of the court "; and so, though the verdict was set aside on August 29, 1893, the bills of exception were not actually filed till September 26, 1893. No objection was raised to this in the appellate court.

At the last trial, as stated, the plaintiff demurred to the evidence of the defendant, in which demurrer the court compelled the defendant to join; and thereupon the jury found a special verdict, as follows: " The plaintiff having demurred to the evidence of the defendant, in which the court required the defendant to join, against his objection, we, the jury, find for the plaintiff, Rich Patch Iron Company, and against the defendant, A. M. Stull, all of the land claimed in the declaration as to which no disclaimer has been filed in this cause, except so much as is embraced in the brown or red lines in the plat of the survey of John A. Carson, which amounts to about twenty acres, and is bounded as follows:      *      *      *
And we further find that the plaintiff is entitled in fee simple to all of the land above mentioned and described in the

declaration, as to which no disclaimer has been filed in this cause, except the aforesaid twenty acres, if in the opinion of the court the plaintiff is entitled to recover upon the law and the evidence; but if the court is of opinion that the law is with the defendant, we find for the defendant for all of the land not disclaimed by him." The defendant thereupon moved the court to set aside the verdict of the jury and grant him a new trial; but the court overruled the motion, and entered up judgment for the plaintiff. Thereupon the defendant excepted, and spread the evidence on the record in his bill of exceptions.

The other facts sufficiently appear in the opinion of the court.

*Benjamin Haden*, for the plaintiff in error.

*R. L. Parrish*, for the defendant in error.

The defendant in error, being plaintiff in the court below, has unquestioned *paper title* to a tract of land situated in Alleghany county and containing 9,000 acres. This paper title commences with the Commonwealth's patent to Benjamin Martin, which bears date December 4, 1795.

The plaintiff in error, who was defendant in the court below, properly connects himself with a deed from Robert N. Weir and wife to John Deeds, dated May 26, 1834, and purporting to convey 178 acres, which by actual survey is only 119 acres, all of which is within the lines of the said 9,000-acre tract. Weir and wife had no title, and therefore the plaintiff in error claims under *color of title* only.

In 1834 John Deeds took actual possession of a part of the said 119 acres, clearing and fencing up something less than twenty acres. The fences were subsequently extended so as to include twenty acres, and this actual possession was con-

tinuous down to the institution of the suit. About nineteen acres, outside of the fence, was practically stripped of timber within about ten years prior to the institution of the suit in the court below, and the residue of the 119-acre tract is in a state of nature.

At the time that Deeds entered, in 1834, neither the plaintiff, nor any one under whom plaintiff claims, had actual possession of any part of the 9,000-acre tract, but in 1842 David Wilson, under whom plaintiff claims title, took actual possession of the 9,000-acre tract, outside of the 119-acre tract, and this actual possession has been maintained ever since, but it has never embraced any part of said 119-acre tract. It was conceded in the court below that the defendant, Stull, has good title, by adverse possession, to the twenty acres embraced within his enclosure, and the plaintiff, the Rich Patch Iron Company, claimed all of the 119 acres outside of the fence enclosing said twenty acres.

There were three trials of the case in the court below. At the first trial there was a verdict for the defendant, which was set aside by the court; at the second trial there was a hung jury, and at the third trial the plaintiff demurred to the evidence of the defendant, Stull. The court gave judgment for the plaintiff for all of the land claimed, being all of the 119-acre tract except the twenty acres which was enclosed.

It is insisted in behalf of the plaintiff in error that the question involved in this case was decided in the case of *Taylor* v. *Burnsides*, 1 Gratt. 165, and to sustain this view the 5th instruction, on page 210, is relied on. In other words, it is insisted for plaintiff in error that it was decided in *Taylor* v. *Burnsides* that if the junior claimant takes possession of a part of the land in controversy when the real owner is in actual possession of no part of *his tract*, the junior claimant, by such entry, acquires possession

to the limits of his boundaries, and that the subsequent entry and taking actual possession by the real owner of his tract, outside of the limits of the land claimed by the junior claimant, does not have the effect of restricting the junior claimant to his close, or to what he has in actual adverse possession, and does not in any way disturb the possession of the junior claimant. I insist that in *Taylor* v. *Burnsides* no such proposition was decided; that the court did not, in that case, intend to decide, and did not decide, that if the junior claimant makes the first entry on the land in controversy, he cannot be ousted of his *constructive* possession and confined to his *actual* possession by the entry of the real owner outside of the claim of the junior claimant. I admit it to be plainly settled law that if a junior claimant takes actual possession of a part of the tract claimed by him, all of which is in controversy, the real owner not being in actual possession of any part of his land, said junior claimant, by such entry, acquires an *actual* possession of so much as he holds in *actual* adverse possession, and a *constructive* possession of all of the land within his boundaries outside of his actual possession. But I insist that if when the junior claimant enters on the land in controversy, the real owner is in actual possession of his tract outside of the land claimed by the junior claimant, the junior claimant can acquire no constructive possession at all, and that he is therefore confined to what he has in *actual* adverse possession. I further insist that even though the junior claimant makes the first entry, as was done in this case, the effect of the subsequent entry of the real owner on his tract outside of the land in controversy, is to oust the junior claimant of his *constructive* possession and to confine him to his close, or, in other words, to confine him to what he has in *actual* adverse possession.

I insist that the effect of the actual possession of the real owner outside of the land in controversy is to prevent the

Argument.

junior claimant's acquiring any mere *constructive* possession by a subsequent entry, and, if the junior claimant makes the first entry, the effect of the subsequent entry of the real owner on his tract, outside of the land in controversy, is to oust the junior claimant of his *constructive* possession, and to confine him to what he has in *actual* possession. This, I think, illustrates the difference between the real title and a pretended title. Of course, the subsequent entry of the real owner must be made before the junior claimant perfects his title by the statute of limitations, otherwise he would cease to be the real owner, and the junior claimant would become the real owner. In other words, I insist that the question presented is the same, whether the real owner is in actual possession, outside of the land in controversy, at the time the junior claimant enters, or takes such possession after the entry of the junior claimant.

This question was left undecided in *Taylor* v. *Burnsides*. Judges Baldwin and Stanard differed about it, and Judge Cabell, the only other judge who sat in the case, expressed no opinion upon it. The question was left undecided in *Overton* v. *Davisson*, 1 Gratt. 211, and it has never been decided by this court. See *Cline* v. *Catron*, 22 Gratt. 392; *Turpin* v. *Saunders*, 32 Gratt. 38 and 39. As stated by the reporter, 1 Gratt., page 168, none of the parol evidence in *Taylor* v. *Burnsides* was put into the record. All of the evidence in the record consisted of the title papers and certain tax receipts. The case went up upon the instructions given in the trial court, and, as the record contains none of the parol evidence given at the trial, there is nothing to show the pertinency of the instructions asked, or of those this court said ought to have been given.

The five instructions that this court said ought to have been given will be found on pages 209 and 210. They cannot be construed in the light of the facts in the case, because no facts

Argument.

are given, no parol evidence being in the record. They must therefore be construed together. Reading the fifth instruction in connection with the second instruction, it will be seen that the latter relates to a case in which the junior claimant is in *actual* possession of the *whole* of the land in controversy, an actual possession either by residence or cultivation, or by what the law makes equivalent thereto. The fifth instruction, therefore, relates also to a case in which the junior claimant is in *actual* possession of the whole of the land in controversy, and not one of the five instructions sustains any other hypothesis. This is evidently Mr. Grattan's construction of the fifth instruction, for he puts it and the question left unsettled into the syllabus, page 166, as follows :

" 7. The entry of the demandant, or those under whom he claims, upon and possession of, the land within his elder grant, not embraced by the junior grant of the tenant, cannot oust the tenant, if at the time of the entry of the demandant the tenant had actual possession of the land embraced by his grant.

" 8. *Quære :* If, in this last case, the possession of the tenant is limited, by the entry and possession of the demandant, to his close, or if it extends to the boundaries of his patent ? "

Judge Baldwin held that if a junior claimant takes actual possession of a part of the land in controversy, the real owner being in actual possession outside of the land in controversy, the junior claimant's possession must be construed to extend to the limits of his claim, thereby making the condition of a squatter under a pretended title better than the condition of the real owner in actual possession. Judge Stanard properly differed with Judge Baldwin, and I respectfully insist that Judge Stanard was right.

The current of authority was not only against Judge Baldwin, as he admitted, but there was not a single authority then in existence to sustain him, and the only reason he gave for

permitting his view of the policy of the law to override in his mind the then unbroken current of authority was that in Virginia " we have a statute providing that possession of part shall not be possession of the whole where an actual adverse possession is proved."

This statute constitutes section 2740 of the Code of Virginia of 1887, and its exact language is as follows : " In a controversy affecting real estate, possession of part shall not be construed as possession of the whole when an actual adverse possession can be proved." It first appears in Virginia as section 28 of the act of December 19, 1792. See Virginia Statutes at Large, new series, chap. 15, section 28, page 33. Judge Baldwin said (1 Gratt. 197) : " This statute was surely not passed merely for the protection of squatters, and must have been intended to embrace the case of an actual possession of the rightful owner beyond, and to the adverse claimant within, the limits of the part in controversy."

There are two classes of squatters—one who squat under a claim of title, and the other who squat without claim of title.

Every junior patent and every deed from a person who has no title is void—a mere nullity—and he who takes possession of another person's land under a void patent or deed is a squatter and a trespasser *ab initio*, and he continues to be a squatter and trespasser until the owner's right of action is barred by the statute of limitations. If it were otherwise, the owner could never eject from his land any adverse claimant. In using the term " *squatter*," however, Judge Baldwin evidently meant to refer to a person who squats on another person's land without claim of title ; but a moment's reflection would have been sufficient for that great man to see that squatters, without claim of title, can never acquire adverse possession, *and are therefore not embraced at all within the terms of the statute.* Adverse possession is founded on adverse claim ; and, where there is no adverse claim, there

can be no adverse possession. See 1 Lomax's Dig. 794-5;
2 Minor (2d edition) 506. So that the statute in question
was designed to protect adverse claimants only. Moreover,
it afforded to adverse claimants better protection than they
had at common law, for it is doubtful whether, at common
law, any adverse possession, even by actual occupancy or
*pedis positio,* could be acquired by a junior claimant against
the real owner who is actually occupying some part of his
tract, as I shall presently show. And if there was a barely
possible doubt of what the common law is, the statute in
question was an absolute necessity, while, on the other hand,
if the common law was not in doubt, such a statute, at the
early day at which it was enacted, was wise and proper as
declaratory of the common law, thereby rendering it stable
and staunch. We have other instances of declaratory statutes,
notably the statute of frauds of 13 Elizabeth, which, as Chief-
Justice Tilghman observes (1 Binney 502), "goes no further
than the common law."

At common law, before the owner of a tract of land actually
enters upon it, he has of it what we call legal seisin; and,
when he enters upon it, and lives upon it in person or by his
tenants, he has, in addition to legal seisin, actual possession
of the whole tract, including his woods and his waters, as
well as fields, pastures, and dwellings. And if an intruder
enters adversely, he disseises the real owner, because of the
principle declared in the statute that "possession of part
shall not be construed as possession of the whole when an
actual adverse possession can be proved."

But to what extent does the intruder disseise the owner?
The statute declares to the extent of his "*actual adverse pos-
session,*" and beyond this it gives us no light whatever. It
tells us that there must be not only an "*adverse possession,*"
but that it must be an "*actual adverse possession.*" If a
squatter takes possession, or is in possession, *under color of*

*title*, of a part of a tract of land, when the owner is in possession of the tract outside of the squatter's claim, the squatter is confined to his close ; otberwise the mere constructive possession of the adverse or junior claimant, who has no legal seisin, is better than both the actual possession and legal seisin of the owner combined. There is certainly nothing in the statute that declares or requires that the combined actual possession and legal seisin of the owner shall bow before the naked constructive possession of a junior claimant, and the courts ought not so to construe the statute as to make the rights of the owner inferior to those of an adverse junior claimant, unless required so to construe it by its express terms.

I insist that the statute does not require it. It does not justify it. It only says that the owner shall not be deemed to be in possession of *all* " when an *actual adverse possession* can be proved," and it leaves us to learn from the common law what " *an actual adverse possession* " is, as well as the limit to which it extends under the various conditions that may arise between land-owners and adverse claimants. If a junior claimant, under color of title, remains on the land during the statutory period, the owner having no actual possession of any part of his tract at any time during the junior claimant's occupancy, the junior claimant acquires title to all of the land defined in whatever constitutes his color of title, whether it is a void deed or something else. But if, *when* the junior claimant enters upon a tract of land under color of title, or *afterwards*, before the junior claimant has perfected his title under the statute of limitations, the owner is in actual possession or takes actual possession of the tract outside of the junior claimant's claim, I maintain that the effect of said actual possession of the owner is to confine the. junior claimant to his close from the date that the owner takes actual possession.

In the case of *Green* v. *Liter*, 8 Cranch 229, there were

Argument.

eleven questions considered by the Supreme Court of the
United States. The tenth question, page 231, (I quote from
Curtis's Sup. Court Decisions, Vol. 3, page 106,) is as
follows: " 10th.  The Commonwealth having first made and
granted a patent to the demandant, and afterwards, by her
patent, granted a part of the same land to the defendants,
who entered and *obtained the first possession,* the demandant
afterwards entered and took possession under his first grant
of that part of his land not within the patent of the last
grantee—who has the best mere right to the land, where the
patents conflict, outside of the actual close of the last
grantee?" (*Note.*—The word " *last* " in the phrase " within
the patent of the last grantee," above quoted, is printed
" first " in my edition of Curtis's Decisions, but the misprint
is so obvious that I substitute the word " last " for the word
" first.")

The court held unanimously, Mr. Justice Story delivering
the opinion (page 250, or 3 Curtis 113), as follows: " As to
the tenth question : The general rule is that if a man enter
into lands, having title, his seisin is not bounded by his actual
occupancy, but is held to be co-extensive with his title. But,
if a man enter without title, his seisin is confined to his pos-
session by metes and bounds. In the case put by the court
below, the first patentee had the better legal title, and his
seisin presently, by virtue of his patent, gave him the best
right to the whole land, upon the principles which we have
already stated. *A fortiori,* he must have the best mere right
to the land not included in the actual close of the second
patentee. For, by construction of law, he has the eldest
seisin, as well as the eldest patent."

The case of *Green* v. *Liter* is on all fours with the case at
bar. In *Green* v. *Liter* the junior patentees took the first
possession, and in the case at bar the junior claimant, John
Deeds, Sr., took the first possession. I call special attention

to the fact that, while *Green* v. *Liter* is a Kentucky case, both of the patents for the lands in controversy were issued by the State of Virginia, and the suit was instituted and tried under Virginia laws.   In the statement of the case (page 229), the reporter says : " The writ of right was sued out under the act of the Virginia Assembly, entitled, ' An act for reforming the method of proceeding in writs of right." (See 12 Hening St., page 345, chap. 59.)   The suit was a Virginia action, controlled by Virginia law, because, in the act of the General Assembly of Virginia consenting to the formation of the State of Kentucky, it was provided· that all land titles acquired under Virginia laws before the separaration should be valid, and that all rights under said titles should be determined under Virginia laws.   13 Hening St., page 17, chap. 14.

The doctrine of *Green* v. *Liter*, upon the point at issue, was subsequently affirmed by the United States Supreme Court in *Hunt* v. *Wickliffe*, 2 Pet. 201.   On page 212, Chief Justice Marshall, in delivering the opinion of the court, says : " In this state of things it is well settled that the party having the better right is in constructive possession of all the land not occupied in fact by his adversary.   If, then, the plaintiffs in this case have the better title, that title is barred by the possession of the defendant, so far as that possession· was actual, but no further."   The same doctrine is also held in the following cases : *Barr* v. *Gratz*, 4 Wheat. 213 ; *Clarke* v. *Courtney*, 5 Peters 319.   In the case last cited Mr. Justice Story says for the court, page 354 : " The reason is plain ; both parties cannot be seised at the same time of the same land under different titles, and the law, therefore, adjudges the seisin of all which is not in the actual occupancy of the adverse party to him who has the better title."   The doctrine of *Green* v. *Liter* is also re-affirmed to the fullest extent by the United States Supreme Court in *Hunnicutt* v. *Peyton*,

102 U. S. 333, and especially page 369. On page 369 Mr. Justice Strong, for the court, after quoting from *Clarke* v. *Courtney*, *supra*, says : " One who enters upon the land of another, though under color of title, gives no notice to that other of any claim, except to the extent of his actual occupancy. The true owner may not know the extent of the defective title asserted against him, and if while he is in actual possession of the land, claiming title to the whole, mere constructive possession of another, of which he has no notice, can oust him from that part of which he is not in actual possession, a good title is no better than one that is a mere pretence. Such, we think, is not the law." A few lines lower down, on same page, Mr. Justice Strong says: " In *Altemus* v. *Long*, 4 Pa. St. 254, it was ruled that though actual possession under a junior title of part of a tract of land, which interfered with an older grant, gave possession of the whole to the holder of the junior title, yet a subsequent entry of the true owner upon any part of his land was an ouster of the intruder from what he had in constructive possession merely. We know of no authoritative decision that is in conflict with this."

The case of *Altemus* v. *Long*, cited by Mr. Justice Strong, *supra*, will be found also in 45 Am. Dec. 688. The learned counsel for the appellant says in his petition (page 6) that *Altemus* v. *Long* was decided upon a local Pennsylvania statute, " passed for the benefit of old William Penn," that made the entry of the real owner upon any part of his land operate as an ouster of the junior adverse claimant, not only from the wood land claimed by him, but also from the cleared land, and even from his dwelling-house ; and he cites *Altemus* v. *Campbell*, 34 Am. Dec. 494, to sustain what he says about the local statute. By referring to the two cases it will be seen that each of them was decided upon common law principles exclusively, and upon no local statute enacted for the

benefit of William Penn or any one else. In *Altemus* v. *Campbell*, 34 Am. Dec. 494, Chief-Justice Gibson, for the court, says: "An entry puts the owner for a time in actual possession ; and, as that, in the case of a mixed occupancy, is referable to him exclusively who has the right, it gives him momentarily the advantages of actual enjoyment; and, momentarily displacing the adverse possession of the occupant, it instantly undoes all that his intrusion had done towards the accomplishment of a title." The only statute referred to in *Altemus* v. *Long* is the statute of limitations, and the only act referred to in *Altemus* v. *Campbell* is at the beginning of the opinion of the court by Chief-Justice Gibson, as follows: "In our act of 1785 is comprised the substance of 21 Jac. 1, c. 16, under which an entry has always had its common law properties, and these have been attributed to it, under our own statute, by the ablest men in the profession." The opinion of the court shows that the case was decided upon common law principles, and the extract above quoted shows that the Pennsylvania statute contained the substance of 21 Jac. 1, c. 16, which was a statute of limitations.

Our Virginia statute of limitations also contains the substance of 21 Jac. 1, c. 16, as will be seen by comparing chap. 128, Vol. I., Code 1819, pages 487 *et seq.*, with the statute 21 Jac. 1, c. 16, and also with our present statute of limitations. It is true that writs of formedon, writs of entry, and writs of right were abolished by the Code of 1849 (section 2759 of the Code), and the number of years required by the statute to bar suits of different kinds has been several times changed; but our statute of limitations still comprises the substance of 21 Jac. 1, c. 16, so far as it is applicable to our present forms of action. In fact, as stated in " Sedgwick & Wait on Trial to Title to Land," section 274, " this statute has been the model of all the legislation on the limitation of actions for the

recovery of land in this country." See also *Walden* v. *Gratz*, 1 Wheat. 292. The case of *Altemus* v. *Long* arose from an interlock of two patents. The junior claimant entered and enclosed a part of the interlock when the elder patentee was not in the actual occupancy of any part of his tract. Subsequently the elder patentee, who was the real owner, entered upon his tract outside of the interlock. The court held that, by this entry, the real owner acquired possession instantly of his whole tract, and the effect of his entry was not only to confine the junior claimant to his close, but also to suspend for an instant his possession of the enclosed part. Near the close of his opinion Chief-Justice Gibson says: "By the plaintiff's entry, therefore, he was, in contemplation of law, re-possessed of every part of his survey, and the defendant's exclusive possession of the enclosed part was for an instant suspended, so that it lasted no longer than his constructive possession of the whole." In other words, in *Altemus* v. *Long* the court held that when the real owner enters upon his tract, and takes actual possession thereof, such entry on a part of said tract gives him actual possession of the whole; and as two people, under conflicting claims, cannot be in possession of the same land at the same time, the entry of the real owner, outside of the interlock, not only ousts the squatter or junior claimant from all of the land in his constructive possession, but it also, for an instant, suspends the junior claimant's actual possession of the portion of the interlock under fence, in order that the actual possession of the real owner, by virtue of his entry, may extend to his whole tract. The same doctrine was held in *Altemus* v. *Campbell*, as above shown.

The Pennsylvania trial court, in construing the common law in *Altemus* v. *Long*, instructed the jury that the entry of the owner would "break the continuity of the defendant's possession, so far as he had not enjoyed it for twenty-one

years, except to such portion as he may have actually enclosed." 45 Am. Dec., page 689, near bottom. On appeal, however, the Supreme Court held, as above shown, that the entry of the owner went further, and suspended for an instant the junior claimant's possession of what he had enclosed. I know of no other case in which this precise question has arisen, but the fact that, at common law, the doctrine of adverse possession is capable of the construction placed upon it in the two cases of *Altemus* v. *Campbell* and *Altemus* v. *Long* by the Supreme Court of Pennsylvania, with a great lawyer like Chief-Justice Gibson as its spokesman, illustrates the wisdom, as well as the meaning, of the statute referred to by Judge Baldwin in *Taylor* v. *Burnsides, supra,* that "possession of part shall not be construed as possession of the whole, *when an actual adverse possession can be proved.*" See Code of Virginia, section 2740.

The only case I have been able to find in conflict with the five cases from the Supreme Court of the United States and the two cases from Pennsylvania, above cited, is the case of *Garrett* v. *Ramsey,* 26 West Va. 345, which was decided by a divided court, and which is not cited in the petition for appeal. *Garrett* v. *Ramsey* was decided on July 9, 1886. Prior to that time, to-wit, in the year 1879, the Legislature of West Virginia had enacted into a statute Judge Baldwin's view of the question now at issue (see West Va. Code of 1887, chap: 90, section 19, page 684), but Garrett sued Ramsey in the court below before the statute was passed, and hence the statute did not protect Garrett, who lost his case in the trial court, but, on appeal, it was reversed by a divided court, as above stated. The Legislature of West Virginia had enacted the policy of the State into the statute above cited, and the feeling of the State in favor of junior claimants had been previously manifested in her organic law. See West Va. Constitution, Art. XIII. Notwithstanding these facts, Judge

Green dissented in an able opinion, and concurred with the judge of the trial court, the other three judges reversing the trial court.   So that, out of the five West Virginia judges who passed upon the question, two of them concurred with the Supreme Court of the United States in the cases above cited, and the other three adopted the view of Judge Baldwin. Judge Snyder delivered the opinion of the majority of the court, and discussed the question involved with his usual ability ; but, in seeking a reason for enacting the statute of December 19, 1792, (Va. Code, sec. 2740,) relied on as the basis of his opinion, he goes too far for his purposes—far enough, indeed, to make manifest the real object of the Legislature in the enactment, as I shall presently show.   The only authorities he cites to sustain his conclusion are contained in the following paragraph (26 West Va. 376–7): " The foregoing conclusion is fully sustained by the able and instructive opinion of Judge Baldwin in *Taylor* v. *Burnsides*, 1 Gratt. 190.   It is also sustained by the opinion of Judge Lee, as I understand it, in the case of *Koiner* v. *Rankin*, 11 Gratt. 424, and by the decision of the court in *Cline* v. *Catron*, 22 Gratt. 378, 392, though the question was not directly presented by the record in the two latter cases."

It is difficult to see how a learned judge like Judge Snyder can speak of the *obiter dictum* of Judge Anderson in *Cline* v. *Catron* as " *the decision of the court,*" and admit in the next breath that the question at issue was not involved in that case.   *Turpin* v. *Saunders*, 32 Gratt. 27, was decided in July, 1879, six years before the decision of *Garrett* v. *Ramsey*, 26 W. Va. 345.   Judge Snyder evidently had not seen *Turpin* v. *Saunders* when he delivered his opinion in *Garrett* v. *Ramsey*, and he did not know that in *Turpin* v. *Saunders* (see page 39, note 32 Gratt.) Judge Anderson repudiated his *obiter* in *Cline* v. *Catron*, *supra*, with the hearty concurrence of all of the surviving judges who sat in that case.   As to

Argument.

Judge Lee's opinion in *Koiner* v. *Rankin*, 11 Gratt. 420, it will be noted that Judge Snyder, referring to his own opinion, is careful to say : " It is also sustained by the opinion of Judge Lee, *as I understand it.*" All that Judge Lee says in *Koiner* v. *Rankin* about Judge Baldwin's opinion in *Taylor* v. *Burnsides* will be found in 11 Gratt., pages 428–9, and, by reading so much of these two pages as relates to Judge Baldwin's opinion, it will be seen that Judge Snyder misunderstands Judge Lee, and that the latter endorses Judge Baldwin's opinion *upon the points decided* in *Taylor* v. *Burnsides*, and not Judge B.'s *obiter*. Judge Green, in his able dissenting opinion in *Garrett* v. *Ramsey*, 26 West Va. 362, *et seq.*, effectually disposes of the suggestion of Judge Snyder that Judge Lee endorsed Judge B.'s *obiter*. After referring to the matter quite fully, he concludes on page 363 as follows : " I do not therefore consider that Judge Lee intended to say he concurred with Judge Baldwin on this proposition, or that he intended to express any opinion on the subject, and the authorities he cites are opposed, as we have seen, to the views of Judge Baldwin on this proposition, though they are strictly co-incident with all his other views, as well as the views of Judge Lee, so far as he expressed any in his opinion. But on the point we are now discussing he did not say one word."

Again, Judge Snyder reasons to his conclusion on page 375 as follows : " Proceeding directly to the proposition under enquiry. The elder grantee, by his actual occupancy of a part of his grant, is, under the common law rule before stated, in the actual possession of the whole grant, including the interlock. His possession, being thus actual, is equal in every respect to any actual possession which the junior could acquire by any possibility ; and the elder, having the title as well as such actual possession, the junior could logically acquire no right by adverse possession, even to such part of the interlock as he might enclose, and of which he has the actual *pedis*

Argument.

*positio.* Two persons cannot at the same time have the actual
possession of the same land. The actual possession by the
elder grantee as effectually excludes the junior grantee from
the possession, in contemplation of law, of that part which he
actually occupies and has enclosed, as it does from that portion
not so occupied and enclosed. This logical result of the
common law rule has been, as before shown, so far modified
by the decisions of the courts as to regard and treat the
adverse claimant as in possession of the land actually enclosed
by him. And in my opinion this rule has been further modi-
fied by the statute of 1792, hereinbefore given, as found in
our Code of 1868. This statute could not have been passed
to protect merely the actual enclosure of the junior claimants,
because that had been done by the decisions of the courts, and
had become the settled law of England and this country
before the statute was enacted."

It will be observed from the foregoing quotation that Judge
Snyder states the common law rule even stronger than Chief-
Justice Gibson states it in *Altemus* v. *Campbell* and *Altemus*
v. *Long, supra.* The view of the latter is that, at com-
mon law, by the entry of the owner on his land out-
side of the interlock, the actual possession of the junior
claimant of what he has enclosed within the interlock "*was
for an instant suspended,*" as before shown. Judge Snyder's
view is to the effect that, at common law, when the owner is
in actual occupancy of any part of his tract, a junior claimant
cannot, by actual entry and occupancy, acquire any adverse
possession at all, because the real owner is in possession of
all of his land, and cannot be ousted even for an instant from
any part thereof. And he adds that the common law rule
had been modified by the decisions in England and in
this country prior to the passage of the act of December
19, 1792, (sec. 2740, Code,) but he cites no such decisions,
and there are certainly very few decisions in this country prior

to 1792 that are reported.  On the contrary, the doctrine of adverse possession has, until recently, been very doubtful and unsettled both in England and this country, and from the case at bar it would seem that it is not yet finally settled.

In the English note to *Nepean* v. *Doe*, 2 Smith Leading Cases, page 555, side page 529, it is said : " The doctrine of adverse possession, until very lately, constituted, and perhaps still constitutes, one of the least settled, although most important, heads of English law."  I also observe in the American notes, page 598, side page 561, that " in *Kentucky* no one acquiring the title to lands, whether by patent or otherwise, is deemed seised, even for the purpose of maintaining trespass, before entry," citing *Neely* v. *Butler*, 10 B. Monroe 48, 51.  However, in all of the American States except Kentucky legal seisin follows the legal title.  Kentucky, therefore, appears to be an outlaw.

Recurring to the doctrine of adverse possession, Judge Lee says, in *Koiner* v. *Rankin*, 11 Gratt. 429, that *Taylor* v. *Burnsides* and *Overton* v. *Davisson* settled doctrine that had been doubtful.  Moreover, by an ordinance of the Virginia Convention, passed July 3, 1776, (Code of 1819, Vol. I., chap. 38, page 135,) " *the common law of England*," together with certain acts of Parliament, was adopted in Virginia, and has been in force in Virginia ever since, except where modified by statutes.  So that, conceding that Judge Snyder was right in saying that the courts had modified the common law doctrine prior to 1792, it was the common law itself that was adopted in Virginia, and not modifications thereof made by decisions of courts; and the construction of the common law by Chief-Justice Gibson in *Altemus* v. *Campbell* and *Altemus* v. *Long, supra,* and by Judge Snyder in *Garrett* v. *Ramsey, supra,* upon the doctrine of adverse possession, shows the propriety and necessity of the act of December 19, 1792, to the effect that possession of part shall not be deemed posses-

sion of the whole, when an actual adverse possession can be proved, if the Legislature really intended to modify the common law rule in any respect, for it seems that, without such a statute, it is at least uncertain whether there could be any adverse possession of any portion of a tract of land, any part of which is occupied by the owner.

Professor Minor evidently concurs in the construction of the law for which we contend. In Vol. II. of his Institutes, second edition, page 509, after quoting sec. 2740 of the Code and citing the authorities, he says : " Fourth. That where the senior patentee is in actual possession of the lands of his patent, lying without the bounds of the junior patentee, and the latter enters on and holds the lands embraced within his patent, it is an *ouster* of the senior patentee only to the limits of the junior patentee's *actual close*, and not to the limits of his grant."

BUCHANAN, J., delivered the opinion of the court.

Upon the first trial of this cause, which is an action of ejectment, there was a verdict in favor of the defendant in the court below, the plaintiff in error here. That verdict was set aside upon the motion of the plaintiff, the defendant in error. To this action of the court the defendant excepted. Upon the next trial the jury failed to agree, and upon the third and last trial the plaintiff company demurred to the evidence. In this demurrer the court required the defendant to join, and, upon consideration, gave judgment in favor of the plaintiff for the land in controversy, except some twenty acres, which the plaintiff admitted it had no right to recover.

From the action of the court in setting aside the verdict upon the first trial, and in rendering judgment in favor of the plaintiff on the demurrer to the evidence upon the last trial, this writ of error was awarded.

The facts were substantially the same upon both these trials, and it is conceded that if the judgment in favor of the plaintiff upon the demurrer to the. evidence was erroneous, then its action in setting aside the verdict of the jury upon the first trial was also erroneous.

It is admitted that the plaintiff connected itself with the Commonwealth by a regular chain of title to the land in controversy, and had the right to recover, unless the defendant made good his defence of adverse possession for more than fifteen years prior to the institution of this action.

The defendant, to make out his defence under the statute of limitations, introduced in evidence a deed from R. N. Weir and wife, dated May 26, 1834, to John Deeds, Sr., for the tract of land in controversy, described by metes and bounds, and represented as containing one hundred and seventy-eight acres, though in fact it only contained one hundred and nineteen acres. The defendant connected himself with the Weir title by a regular chain of conveyances, but it does not appear that Weir and wife had any title to the land conveyed by their deed, which lies wholly within the boundaries of the plaintiff's survey. Deeds, the vendee of Weir and wife, took possession of the land under his deed, cleared and fenced a few acres, claiming title to the whole boundary embraced by his deed. Additional land was cleared from time to time, so that at the time of the trial there were about twenty acres cleared and under fence. The defendant, and those under whom he claims, have continuously held and cultivated the cleared land from the time Deeds took possession in 1834, claiming title to the whole boundary embraced by the deed from Weir and wife. They also cut rail-timber upon the wooded land adjoining the cleared land, with which to build and repair fences upon the land; but a large part of the boundary remained entirely in a state of nature.

At the time Deeds purchased the land in controversy and took possession under his deed, no one was in the actual possession of any portion of the plaintiff's 9,000-acre survey, claiming under that title. Afterwards, in the year 1842, David Wilson, who was then the owner of the plaintiff's survey, placed a tenant upon the land, and soon afterwards placed other tenants upon it. From the year 1842 to the institution of this action, the plaintiff, and those under whom he claims, have had one or more tenants upon the large survey *outside* of the lands in controversy, but never had any one upon, nor exercised any acts of ownership over, the land in controversy.

Upon this state of facts the Circuit Court was of opinion that the defence of adversary possession had not been made out, except as to that part of the land which was under fence, and which the plaintiff admitted it had no right to recover.

It is settled in this State that when a person, having colorable title, enters upon vacant land, claiming title to the whole tract covered by his title papers, his possession is co-extensive with his boundaries, and this is true although the title conveyed by the writing under which he claims is worthless. *Creekmur* v. *Creekmur*, 75 Va. 431, 439; 1 Lomax Dig. 797; 2 Minor's Inst. 481 (4th ed.)

In *Taylor* v. *Burnsides*, 1 Gratt., at pages 191-2, Judge Baldwin says " that the adverse claimant entering and holding under a colorable title, (for example, a patent, deed, or other document,) upon a vacant possession, gains the *actual* possession to the extent of his boundaries," (and this doctrine) "is sustained by numerous authorities, and contradicted by none that I have seen."

In *Overton's Heirs* v. *Davisson*, 1 Gratt. 223-4, the court said : " The court is further of opinion that where the land in controversy is embraced by conflicting grants from the

Commonwealth to different persons, and the junior patentee enters thereupon and takes and holds actual possession of any part thereof, claiming title to the whole under his grant, that such adversary possession of part of the land in controversy is an adversary possession of the whole, to the extent of the limits of the younger patent; and to that extent is an ouster of the seisin or possession of the older patentee, if the latter has had no actual possession of any part of the land within the limits of his grant."

In such a case, that is, where the true owner has only constructive possession, never having entered upon his land, " if the.junior claimant," says Judge Lee, in delivering the opinion of this court in *Koiner* v. *Rankin*, 11 Gratt. 427, " settle upon the land within the interlock, claiming title to the whole within his boundary, he thereby ousts the senior patentee of his constructive possession, and becomes *actually possessed* to the extent of his grant," and cites several Kentucky cases with approval, among them the case of *Fox* v. *Hinton*, reported in 4 Bibb 559, which holds that where " two patents interfere in part, and, before possession is taken under the elder patent, the junior patentee enters upon the land within the interference, with an intention to take possession, he shall be construed to be in possession to the extent of his claim." In discussing the question, on page 560, the Kentucky court said : " There is no doubt that, according to the settled doctrine of the common law, a person might, by entering upon a part of a tract or parcel of land in the name of the whole, gain the possession of the whole, where the possession was at the time of making such entry vacant."

In *Cline's Heirs* v. *Catron*, 22 Gratt., at page 392, this court said upon the subject, that " to be *actual*, the visible occupancy and improvement of a part of the land in controversy is an *actual possession* of the whole to the limits of the claim under which it is held, and ousts or interrupts the legal seisin incident to the patent of the senior grantee."

The possession thus acquired by the junior claimant when he enters upon the land in controversy, improving and cultivating a part, and claiming title to the whole, is an *actual* possession of the whole land within his boundary. And whilst such possession, as was said by Judge Baldwin, in *Taylor* v. *Burnsides*, cited above, may be more manifest as to a part than as to the rest, yet, in reference to the whole, possession of part is possession of the entire tract. Thus the real or apparent owner, dwelling on his farm, is as truly in the actual possession of his woods and waters as of his pastures, fields, and gardens. What is the whole is to be determined by the limits owned or claimed. An intruder, without color of title, is of necessity confined to his mere enclosure. There must be limits to his possession, and these are all he can have. Such (enclosures), however, are not the boundaries of the real or apparent owner; his marked or described abuttals show the extent, not merely of his claim, but of his exclusive sway. The possession, therefore, of the junior claimant in such a case is both *actual* and exclusive; and if such possession be not abandoned during the statutory period by the junior claimant, or he be not actually ousted of such possession by the entry upon and actual possession of *some part of the land in controversy* by the claimant under the senior grant, during that period, his title becomes perfect.

In this case, when the claimant under the deed from Weir and wife entered, in the year 1834, upon the 119-acre tract of land, enclosing and cultivating a part, and claiming title to the whole, his possession was co-extensive with his boundaries, there being at that time no one claiming under the plaintiff's title in the actual possession of any part of his survey. The claimant under the Weir title having thus ousted or disseised the claimant under the plaintiff's title, he was in the *actual* adverse possession of the whole boundary claimed by him, and the statute of limitations then com-

menced to run in his favor, not only as to that part of the land which he had enclosed, but as to all his tract.

Before the period had elapsed necessary to make good the title of the junior claimant under the statute of limitations, those under whom the plaintiff claims entered upon, and took actual possession of, the plaintiff's survey, outside of the land in controversy. This entry and possession, it is most earnestly contended by the counsel of the plaintiff, operated to oust or dispossess the claimant under the Weir title of the whole of the land in controversy, except that part which was enclosed.

We are referred to cases decided by the Supreme Court of the United States and the highest courts of Pennsylvania and of other States, as sustaining this view. The decisions of the Supreme Court of the United States upon questions of land titles follow the decisions of the courts of the States respectively in which the land in controversy is located, and are, therefore, for the most part, based upon local statutes and decisions. For, as was said by Mr. Justice Catron, in *White* v. *Burnly*, 20 Howard, at page 251, " we have endeavored carefully to follow the doctrine of the Supreme Court of Texas in this opinion, because we are bound to follow the settled adjudications of that State in cases affecting titles of land there." *Supervisors* v. *United States*, 18 Wall., at page 82; *Balkam* v. *Woodstock Iron Co.*, 154 U. S. 177, 187.

If, therefore, the question now under consideration were an open question in this State, we could gain but little aid from the decisions referred to, unless we knew that they were based upon statutes similar to section 2740 of our Code, which provides that " in a controversy affecting real estate, possession of part shall not be construed as possession of the whole, where actual adverse possession can be proved."

But the question involved in this case, we think, was raised

and decided in this State as far back as 1844, in the case of *Taylor* v. *Burnsides*, reported in 1 Gratt. 165.

The judgment of the court in that case (in which all the judges sitting concurred), beginning at page 209, says : " The court is of opinion that the instruction given by the said Circuit Court to the jury on the trial of the cause ought not to have been given, but that, in lieu thereof, the said Circuit Court ought to have instructed to the effect following." Then follows five instructions, which the court declares ought to have been given. The fourth and fifth of these instructions are as follows :

" 4. The tenant cannot sustain his said defence of continued adversary possession, if it shall appear from the evidence, that the demandants, or those under whom they claim, did, within said period of twenty-five years, enter upon the land in controversy, and take actual possession thereof by such means as are mentioned in the second instruction.

" 5. That such entry of the demandants, or those under whom they claim, upon, and possession of, the land within their older grants, not embraced by the younger grant of the tenant, could not have the effect of an entry upon and possession of the land in controversy."

This latter instruction holds that an entry upon and possession of the land within the older grant, not embraced within the younger grant, does not have the effect of an entry upon and possession of the land in controversy where the junior patentee had, prior to that time, entered upon and was then actually occupying part of the land in controversy by building, clearing, cultivating, or enclosuring it, claiming title to the whole.

This view must necessarily follow, since, under our decisions, the entry of the junior claimant upon the land in controversy, and his occupancy thereof by building, clearing, cultivating, or enclosing a part, and claiming title to the

whole—the claimant under the senior patent not then being in actual possession of any part of his tract—gives the junior claimant actual and exclusive possession of his whole boundary. The possession of the claimant under the junior title, being an actual adversary possession, to the whole extent of his boundary, the entry and actual possession of the claimant under the senior grant, of lands outside of the lands in controversy would not have the effect of ousting or disturbing the claimant under the junior title as to any part of his tract. The entry, to be good for such purpose, must be made upon the land in controversy; for to oust an actual possession there must be an entry upon that possession. This was expressly held in *Fox* v. *Hinton*, 4 Bibb 559–60, referred to above, and cited with approval by Judge Lee in *Koiner* v. *Rankin*.

If the subsequent entry of the claimant under the senior grant on his tract, outside of the land in controversy, would have the effect of ousting the claimant under the junior grant of any part of his boundary, then he might be ousted or dispossessed not only without his knowledge, but without any means of acquiring knowledge, and without even knowing that any person other than himself claimed title to the land. Under the loose system of granting lands in force at an early day in this State, it is well known that the same land was frequently granted to two or more persons, without any fault upon their part. The claimant under the junior grant, thinking that he had good title to the land, entered upon and actually occupied a part, claiming title to his whole tract. He afterwards sells it for a full price, and his vendee takes a like possession and makes a like claim to the whole tract; and thus the land may be held, as in this case, for fifty years or more. The claimant under the senior grant then brings his action to recover the land embraced in the boundaries of the junior grant. Upon the trial of the case,

the claimant under the junior grant learns for the first time that the senior grantee, or those who claim under him, had, before the statute of limitations had run in favor of those claiming under the junior grant, entered upon a part of the land embraced in the boundaries of the senior grant, five or may be twenty miles away (for these grants frequently contained from 100,000 to 500,000 acres), and had cleared and cultivated a few acres, claiming title to the whole tract. To allow a plaintiff to recover under such circumstances would work the grossest injustice to the claimants under the junior title.

The claimant under the senior patent knows, or ought to know, his own boundaries, and that another has settled within them, claiming and exercising dominion over the lands in controversy, and if under these circumstances he remains quiet, allows the claimant under the junior grant to believe he is the true owner of the land, and fails to assert his right to the land in controversy by action or entry within the statutory period, he ought not to be allowed to recover. The statutes of limitations in real actions are founded upon a wise and salutary public policy. They require nothing but reasonable vigilance upon the part of the owner, and are necessary for the repose of *bona fide* settlers in the regions of our wild and uncultivated lands.

The question involved in this case is not, as counsel for the plaintiff contends, the question left undecided in the cases of *Taylor* v. *Burnsides* and *Overton* v. *Davisson*, 1 Gratt., and in later cases. The question is this, viz. : Does the adverse possession of a claimant under a junior title extend to the whole of his tract, or only to the extent of his enclosures, where there are conflicting grants or deeds to lands causing an interlock, the claimant under the older title *being* in actual possession of a part of his land outside of the interlock, *when* the claimant under the junior title entered upon and took

actual possession of a part of the interlock, claiming title to the whole extent of his boundary? That is still an open question in this State, and, as it does not arise in this case, we do not wish to be understood as expressing any opinion upon it.

It follows from what has been said that the Circuit Court erred in setting aside the verdict of the jury upon the first trial, and that all proceedings in the case in the Circuit Court subsequent to that verdict must be reversed and set aside, and judgment entered upon that verdict for the defendant.

*Reversed.*